**UNITED STATES of America,**
**Appellee,**

v.

**Jaime PADILLA, Defendant–Appellant.**

**Docket No. 98–1411.**

United States Court of Appeals,
Second Circuit.

Argued: March 16, 1999.

Decided: July 14, 1999.

Jeffrey M. Zimmerman, Assistant United States Attorney, Of Counsel, for Appellee.

David A. Lewis, The Legal Aid Society, Federal Defender Division, Appeals Bureau, for Appellant.

* Hon. John R. Gibson, of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. A Section 5K1.1 motion applies to departures from sentencing guidelines. An 18

Before: OAKES, CALABRESI, and GIBSON,* Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Jaime Padilla appeals the 210–month sentence imposed upon him following his guilty plea to three drug counts. Padilla had entered into a cooperation agreement with the Government, pledging assistance in the investigation and prosecution of others, and the Government had filed a motion under Section 5K1.1 of the sentencing guidelines and 18 U.S.C. § 3553(e) (1994) for a downward departure. Padilla failed to appear at his original sentencing hearing. He was apprehended about four months later after he sold two bags of crack and pleaded guilty to state drug charges arising from the sale. The district court granted the Government's motion to withdraw its Section 5K1.1 and 18 U.S.C. § 3553(e) motion,[1] and Padilla was sentenced on the federal charges. Padilla argues that the district court should not have allowed the Government to withdraw its motion, as he had cooperated with the Government as he promised, and that the district court had the power to make a substantial assistance downward departure in the absence of a motion. He also asks that the case be remanded to a different district judge for resentencing. We vacate the judgment of the district court and remand with instructions that the case be reassigned to a different district judge.

Padilla was arrested after he sold a gram of crack cocaine to a Government informant and Government agents found ten grams of crack and three grams of powder cocaine in his apartment.

Padilla and the Government entered into a written plea agreement on February 17, 1995, the same day a superceding information charging the three counts was filed.

U.S.C. § 3553(e) motion applies to departures from statutorily mandated minimum sentences. We refer to the two motions as one.

He appeared and withdrew his not guilty plea to an earlier indictment charging two counts, distribution and possession with intent to distribute five grams or more of crack and distribution and possession with intent to distribute an unspecified quantity of cocaine.

Padilla agreed to state in his plea that in connection with the charged conduct he distributed approximately 200 grams of crack and 200 grams of cocaine. The agreement required Padilla to disclose all information with respect to his activities and those of others; to cooperate with the United States Attorney, the Bureau of Alcohol, Tobacco and Firearms, or any other law enforcement agency; to attend all meetings requested; to provide documents, records, and tangible evidence requested; to testify truthfully before the grand jury; and to commit no further crimes.

The agreement further recited that if Padilla complied with the understandings in the agreement: 1) no testimony or other information would be used against him in any criminal tax prosecution, and 2) he would not be further prosecuted by the United States Attorney's Office: a) for any crimes (except for criminal tax violations) related to his participation in the distribution of and possession with intent to distribute cocaine and crack from April 29, 1994, to May 19, 1994, to the extent that he had disclosed his participation to the office, and b) for his "minimization" (during his first meeting with the Office) of the time period during which he had distributed cocaine and crack. The agreement did not provide protection against prosecution for any crimes except as set forth.

The operative provisions regarding the Government's agreement to file a motion pursuant to Section 5K1.1 and 18 U.S.C. § 3553(e) state:

> In addition, if this Office determines that Mr. Padilla has provided substantial assistance in an investigation or prosecution, and if he has fully complied with the understandings specified in this Agreement, this Office will file a motion, pursuant to Section 5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e), requesting the Court to sentence Mr. Padilla in light of the factors set forth in Section 5K1.1(a)(1)-(5). It is understood that, even if such a motion is filed, the sentence to be imposed on Mr. Padilla remains within the sole discretion of the Court. Moreover, nothing in this Agreement limits this Office's right to present any facts and make any arguments relevant to sentencing to the Probation Department and the Court, or to take any position on post-sentencing motions.

> It is understood that, should this Office determine that Mr. Padilla has not provided substantial assistance in an investigation or prosecution, or has violated any provision of this Agreement, such a determination will release this Office from any obligation to file a motion pursuant to Section 5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e), but will not entitle Mr. Padilla to withdraw his guilty plea once it has been entered.

The agreement concluded by providing that if Padilla committed further crimes or otherwise violated the agreement: 1) Padilla would be subject to criminal prosecution for any violation of which the Office had knowledge; 2) Padilla waived the statute of limitations defense for prosecution of crimes that occurred before the signing of the agreement and that were not time-barred on the date of signing; 3) all of Padilla's statements and testimony, and leads from such statements and testimony, would be admissible in any criminal proceeding brought against Padilla; and 4) Padilla waived constitutional and all other bases for suppression of such evidence.

Padilla aided the Government in its efforts on other cases. Padilla attempted to enter drug transactions with the coconspirator with whom he was initially arrested, but the coconspirator would not deal with Padilla, and the Government dismissed the

charges against the coconspirator. Padilla provided information about Fabio Taveras, another drug dealer, and was prepared to testify in the Taveras case. Padilla's testimony was ultimately unnecessary because Taveras pleaded guilty to the narcotics charge.

After considering Padilla's efforts, the Government submitted a letter pursuant to Section 5K1.1 and 18 U.S.C. § 3553(e) advising the district court that Padilla had provided substantial assistance in the investigation and prosecution of other persons.

Padilla's original sentencing hearing was scheduled for May 23, 1997, but Padilla failed to appear, and the district judge ordered a warrant for his arrest. On September 24, 1997, the New York City Police Department arrested Padilla for participating in the sale of two bags of crack to an undercover police officer. Padilla pleaded guilty to attempted criminal sale of a controlled substance, and the New York state court sentenced him to a year in prison. Padilla was released to federal authorities.

On July 1, 1998, the Government sent a letter to the court that stated, "in light of Mr. Padilla's failure to appear for sentencing ... and his subsequent arrest and conviction on New York State felony narcotics charges, the Government hereby withdraws its previously filed [§ 5K1.1 and § 3553(e)] motion."[2] Padilla wrote a letter opposing the Government's application to withdraw its motion, and the Government answered.

The district judge did not rule on the issue until Padilla's sentencing hearing. The district judge stated, "The question is: Can somebody withdraw a motion? Until the time the motion is decided, yes. In this situation, the question becomes: [Is the Government] acting in bad faith? And the answer has to be no." The district judge further stated, "[U]nder the circumstances here, ... [Padilla] does not get the benefit of any 5K1 letter. It's withdrawn and there is no bad faith."

The district judge sentenced Padilla to 210 months' incarceration, the minimum sentence in the guideline range for an offense level of thirty-six[3] and a criminal history category of II. *See* U.S.S.G. ch. 5, pt. A (sentencing table).

Padilla argues that the district court erred by allowing the Government to withdraw its motion and that the court had the power to make a substantial assistance downward departure in absence of a motion.

### I.

■ Controlling circuit precedent causes us to conclude that the plea agreement is dispositive of the issues. We interpret plea agreements de novo. *See United States v. Rexach,* 896 F.2d 710, 713 (2d Cir.) (district court's application of contract interpretation principles to a plea agreement is reviewed de novo); *see also United States v. Michelsen,* 141 F.3d 867, 871 (8th Cir.) (plea agreement interpretation issues are reviewed de novo), *cert. denied,* —— U.S. ——, 119 S.Ct. 363, 142

---

**2.** Padilla's acts could not have affected the quality of his assistance because the Government had dropped the charges against the coconspirator and Taveras had pleaded guilty before Padilla failed to appear at sentencing and sold the two bags of crack. *Cf. United States v. Resto,* 74 F.3d 22, 26 (2d Cir.1996) ("[A] surprise revelation by the defense as to [defendant's] criminal past would have substantially injured the prosecution's case."); *United States v. Carlson,* 87 F.3d 440, 447 (11th Cir.1996) (defendant's acts undermined his value as a witness), *cert. denied,* —— U.S. ——, 118 S.Ct. 238, 139 L.Ed.2d 169 (1997).

**3.** The court determined an offense level of thirty-six by translating the 200 grams of crack and 200 grams of cocaine that Padilla admitted he distributed into 4,040 kilograms of marijuana, yielding an offense level of thirty-four, and adding two offense levels for obstruction of justice. *See* United States Sentencing Commission, *Guidelines Manual,* § 2D1.1(a)(3) (1997) (drug trafficking guideline); *id.* § 2D1.1, comment. (drug equivalency table); *id.* § 2D1.1(c)(3) (drug quantity table); *id.* § 3C1.1, comment. (n.3(e)).

L.Ed.2d 299 (1998). The district judge's ruling that the motion could be withdrawn gave no consideration to the plea agreement, which was the basis on which the Government filed the motion.

In *U.S. v. Ready*, 82 F.3d 551 (2d Cir. 1996), this Court held that a defendant's waiver of appellate rights in a plea agreement must be carefully analyzed under the terms of that agreement, and determined that Ready had not waived the right to appeal in the agreement. *See id.* at 559–560. We reasoned that plea agreements are to be construed according to contract principles, but "different types of contracts are subjected to different interpretive rules and background understandings. Plea agreements are unique contracts in which special due process concerns for fairness and the adequacy of procedural safeguards obtain." *Id.* at 558 (internal citations and quotation marks omitted). We stated:

> Several rules of interpretation, consistent with general contract law principles, are suited to the delicate private and public interests that are implicated in plea agreements. First, courts construe plea agreements strictly against the Government. This is done for a variety of reasons, including the fact that the Government is usually the party that drafts the agreement, and the fact that the Government ordinarily has certain awesome advantages in bargaining power.
>
> Second, we construe the agreement against a general background understanding of legality. That is, we presume that both parties to the plea agreements contemplated that all promises made were legal, and that the non-contracting "party" who implements the agreement (the district judge) will act legally in executing the agreement.
>
> Finally, courts may apply general fairness principles to invalidate particular terms of a plea agreement.

*Id.* at 558–559 (internal citations omitted).

In *United States v. Gottesman*, 122 F.3d 150 (2d Cir.1997), we vacated an order of restitution under 18 U.S.C. § 3663(a)(3) because the plea agreement made no reference to restitution, but only reserved the right for Gottesman to negotiate a method of payment of his tax liabilities with the IRS. *See id.* at 152. We held that court-ordered restitution with a court-devised payment plan was not part of the bargain. We set out the governing principles as follows:

> [P]lea agreements, like contracts, are instruments used to protect the rights and expectations of the parties. Hence, plea agreements get a contract law analysis tempered with an awareness of due process concerns for fairness and … adequacy.
>
> As with any contract in which the drafting party has an overwhelmingly superior bargaining position, plea agreements are construed strictly against the Government. Here, the district court failed to guard Gottesman's expectations. While the Government certainly contemplated that Gottesman would make tax payments, it was also apparent that the terms of payment were yet to be negotiated by Gottesman and the IRS—not imposed by court order.

*Id.* (internal citations and quotation marks omitted; alteration in original).

*Ready* and *Gottesman* require that we carefully examine the plea agreement to determine whether withdrawal of the Section 5K1.1 and 18 U.S.C. § 3553(e) motion falls within its terms.

## II.

■ The operative language of the plea agreement regarding the filing of the Section 5K1.1 and 18 U.S.C. § 3553(e) motion is that "if this Office determines that Mr. Padilla has provided substantial assistance in an investigation or prosecution, and if he has fully complied with the understandings specified in this Agreement, this Of-

fice will file a motion, pursuant to Section 5K1.1 [and] ... 18 U.S.C. § 3553(e)" and

[S]hould this Office determine that Mr. Padilla has not provided substantial assistance in an investigation or prosecution, or has violated any provision of this Agreement, such a determination will release this Office from any obligation to file a motion pursuant to Section 5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e), but will not entitle Mr. Padilla to withdraw his guilty plea once it has been entered.

The agreement, however, is silent with regard to the *withdrawal* of a Section 5K1.1 and 18 U.S.C. § 3553(e) motion. Further, it specifically recites the consequences if Padilla committed further crimes or otherwise violated the agreement,[4] but the right to withdraw the Section 5K1.1 and 18 U.S.C. § 3553(e) motion is not enumerated as one of such consequences.

The terms of this agreement demonstrate the Government's "awesome advantages in bargaining power" referred to in *Ready.* Padilla subjected himself to a potentially greater sentence by admitting that he had distributed approximately 200 grams of crack and 200 grams of cocaine, while the original indictment referred to five or more grams of crack and the superceding information referred to fifty-five or more grams. It required Padilla to waive statute of limitations defenses and constitutional and other objections to the admissibility of evidence if he committed further crimes or violated the agreement.

Reading the agreement strictly against the Government, as our precedent requires, we conclude that it prohibits the Government from withdrawing the Section 5K1.1 and 18 U.S.C. § 3553(e) motion because it failed to enumerate specifically the

right to withdraw the motion in the several specific and serious consequences that would follow if Padilla committed further crimes or otherwise violated the agreement. *See Gottesman,* 122 F.3d at 151–52 ("[I]t would seem self-evident that for a court to order restitution ... the plea agreement might be expected to mention the word 'restitution.' "). The right to withdraw motions for violation of the terms of a plea agreement has been specifically included in such agreements, as shown in *United States v. Anzalone,* 148 F.3d 940, 942–43 (8th Cir.) (Murphy, J., dissenting), *vacated and reh'g en banc granted,* 148 F.3d 940, *reinstated and reh'g en banc denied,* 161 F.3d 1125 (1998). The district court, therefore, erred in allowing withdrawal.

### III.

Our decision is consistent with other holdings interpreting the language of plea agreements in the context of substantial assistance motions. The Fourth Circuit, in *United States v. Dixon,* 998 F.2d 228 (4th Cir.1993), held that the defendant was entitled to specific performance of the Government's promise to file a substantial assistance motion. *See id.* at 231. The Government had promised that if Dixon's cooperation was "deemed by the Government as providing substantial assistance in the investigation or prosecution of another" it would move pursuant to Section 5K1.1. *See id.* at 229. The Government filed the motion, but thirteen days later sought withdrawal because the Assistant U.S. Attorney had filed the motion without obtaining approval of the U.S. Attorney. *See id.*

*Dixon* reasoned that within constitutional bounds, the Government enjoys unbridled discretion with the Section 5K1.1 motion, and that this discretion gives the

---

**4.** The Government could prosecute Padilla for any criminal violation of which the Office had knowledge; Padilla waived the statute of limitations defense for crimes that occurred before the signing of the agreement and that were not time-barred on the date of signing;

all of Padilla's statements and testimony, and leads from such statements and testimony, would be admissible in any criminal proceeding brought against Padilla; and Padilla waived constitutional and all other bases for suppression of such evidence.

Government a "potent bargaining chip" for plea agreements. *Id.* at 230. "By playing this chip, the government bridles its discretion with the terms of the agreement . . . ." *Id. Dixon* went on to hold that while "plea agreements are generally interpreted under the law of contracts, the constitutional basis of the defendant's 'contract' right and concerns for the honor and integrity of the government require holding the government responsible for imprecisions or ambiguities in the agreement." *Id.* The court held that the language "deemed by the Government as providing substantial assistance" could not be read so deferentially as to refer to the Government's subjective intent about whether the motion should be filed. Instead, the Government promised to deem whether the assistance was substantial, and having done so, had to keep the promise of filing the motion. *See id.* at 231.

In *Anzalone,* the court reversed the district court's order denying Anzalone's motion to compel a Section 5K1.1 motion from the Government. *See Anzalone,* 148 F.3d at 940–42. The court refused to read unclear language in the agreement as negating the Government's obligation to file the motion once it had determined that Anzalone substantially assisted. *See id.* at 942.[5]

The Government relies on *United States v. Stringfellow,* 89 F.3d 851, 1996 WL 315750 (10th Cir.1996) (unpublished disposition), *cert. denied,* 519 U.S. 982, 117 S.Ct. 435, 136 L.Ed.2d 333 (1996), in arguing that Padilla should not benefit merely because the Government filed the motion in the first instance, reasonably anticipating that Padilla would not breach the agreement before sentencing. *See id.* at 982, 117 S.Ct. 435. *Stringfellow* is an unpublished disposition from Tenth Circuit, not binding precedent in its courts. *See* 10th

Cir. R. 36.3. We take it that likewise we should not give it persuasive weight. Cf. 2d Cir. R. 0.23 (unreported cases not to be used in any court).[6]

The plea agreement was silent as to whether the Government could withdraw the Section 5K1.1 and 18 U.S.C. § 3553(e) motion while it specifically enumerated the Government's rights upon Padilla's committing further crimes, or otherwise violating the agreement. "The Government [is] responsible for imprecisions or ambiguities in the agreement." *Dixon,* 998 F.2d at 230. We therefore hold that allowing the Government to withdraw the motion violated the plea agreement and was erroneous.

Our holding is necessarily a narrow one because of the limited nature of the issue raised by the attempted withdrawal of the motion, involved in a paucity of the decided cases. Withdrawal has been specifically dealt with in some plea agreements but was not in the one before us. There is nothing about our treatment of this issue or holding that encourages behavior or protects expectations of those like Padilla any more than existing Second Circuit case law. We are convinced that our holding is required by our several cases analyzing plea agreements, and is consistent with persuasive decisions from our sister circuits.

The Section 5K1.1 and 18 U.S.C. § 3553(e) motion remains before the district court, and we need not address Padilla's argument that the district court can make a departure without the motion.

## IV.

■ Padilla argues that he should be resentenced by a different district judge. The district judge stated that Padilla's counsel's notion of justice is "something

---

5. *Anzalone* also reasoned that the Government could not decline to file the motion for a reason unrelated to the defendant's substantial assistance, a question we need not address. *See id.* at 941.

6. Further, *Stringfellow* does not involve language in a plea agreement that specifically enumerated the Government's rights upon violation of the agreement, and is inapplicable to language in Padilla's plea agreement and our precedent requiring a strict reading of the agreement.

which baffles me totally and completely" and "changes from day to day" and that "God knows when I've looked to you [Padilla's counsel] for justice, I've never seen it." In response to Padilla's statement that he was sorry he had lost his family, the district judge stated, "[H]ow about the families of the people whose lives you've ruined? You don't care about them."

We direct that, upon remand, this case be reassigned to a different district judge. As in *United States v. Campo,* 140 F.3d 415 (2d Cir.1998)(per curiam), we have no doubt that the district judge who originally sentenced Padilla could fairly resentence him. *See id.* at 420. However, we also must consider "whether reassignment is advisable to preserve the appearance of justice." *Id.* (quoting *United States v. Robin,* 553 F.2d 8, 10 (2d Cir.1977)). In view of the district judge's statements, particularly regarding Padilla's counsel, the appearance of justice would best be preserved by reassignment. Because resentencing will not require extensive additional proceedings, reassignment will not "entail waste and duplication out of proportion to any gain in preserving the appearance of fairness." *Id.* (quoting *Robin,* 553 F.2d at 10).

As we have noted above, the plea agreement gives the Government the right to present any facts and make any arguments relevant to such sentencing.

We vacate the judgment of the district court and remand the case for resentencing by a different district judge.