

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-14-2000

# United States v. Swint

Precedential or Non-Precedential:

Docket 99-5569

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

## Recommended Citation

"United States v. Swint" (2000). *2000 Decisions.* Paper 166.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/166

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 14, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-5569

UNITED STATES OF AMERICA

v.

CLEVELAND SWINT,

      Appellant.

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Criminal No. 98-713)
District Judge: Honorable Harold A. Ackerman

Argued: March 9, 2000

Before: BECKER, Chief Judge, and NYGAARD and
GARWOOD,* Circuit Judges.

(Filed: August 14, 2000)

       John H. Yauch, Esq. (ARGUED)
       Assistant Federal Public Defender
       Newark, New Jersey
        Counsel for Appellant

_____

* Honorable Will Garwood, United States Circuit Judge for the Fifth
Circuit, sitting by designation.

        Shawna H. Yen (Argued)
        Assistant United States Attorney
        Robert J. Clear
        United States Attorney
        Newark, New Jersey
         Counsel for Appellee

OPINION OF THE COURT

GARWOOD, Circuit Judge:

Defendant-appellant Cleveland Swint (Swint) pleaded guilty to one count of knowingly using and trafficking in unauthorized access devices to obtain things of value aggregating more than $1,000 during a one-year period, in violation of 18 U.S.C. SS 1029(a)(2) & 2. He entered into a written plea agreement with the government, pursuant to which he agreed to fully cooperate with the government in, inter alia, its investigations. The government agreed not to prosecute him for other criminal activity committed during the time of his charged offenses and to move for a downward departure in his sentence in exchange for Swint's "substantial assistance" with one or more government investigations and not committing any additional crimes. The agreement provided that "[t]he determination whether Swint has provided substantial assistance to the Government rests solely in the discretion of " the United States Attorney's Office. After entering into the agreement but before sentencing, Swint committed two more offenses. The government informed Swint that he had violated the plea agreement and that it would not seek the downward departure. At sentencing, the district court sentenced Swint to a term of seventy months' imprisonment. Swint appeals his sentence, arguing that the government breached the plea agreement. We affirm.

Facts and Proceedings Below

In August, 1997, police officers in Edison, New Jersey, along with U.S. Secret Service Agents, began an investigation into the suspected unlawful use of innocent individuals' names and social security numbers to obtain

2

bank loans, checks, credit cards, and an auto lease. The investigation revealed Swint as the perpetrator of these activities. Investigators ultimately learned that during a one-year period, Swint had engaged in at least twenty-six fraudulent transactions, resulting in total losses (actual and intended) of $264,833.56. On October 20, 1997, Swint was arrested and charged by information with one count of violating 18 U.S.C. SS 1029(a)(2)1 & 2.2

Soon after his arrest, Swint began negotiations with the government regarding a plea agreement. Pursuant to the agreement, the government agreed not to prosecute Swint for other charges arising from his fraudulent activities between May, 1997 and October, 1997. In return, Swint agreed to "cooperate fully" with the U.S. Attorney's investigation, including providing truthfully all information requested of him; testifying on behalf of the government; and, if requested, making himself available for assisting one or more government investigations, including making phone calls, tape recording conversations, and introducing law enforcement officials to other individuals, provided "[a]ll such activity by Swint must be conducted only at the express direction and under the supervision of . . .[the United States Attorney's Office] and federal law enforcement personnel." The agreement provides that the nonprosecution provisions will be ineffective if Swint commits any new federal, state or local crimes" or otherwise has violated any provision of this agreement." It states that if Swint fully complied with the agreement and provided

_____

1. 18 U.S.C. S 1029(a)(2) proscribes

      "knowingly and with intent to defraud traffics in or uses one or more
      unauthorized access devices during any one-year period, and by
      such conduct obtains anything of value aggregating $1,000 or more
      during that period."

2. 18 U.S.C. S 2 provides:

      (a) Whoever commits an offense against the United States or aids,
      abets, counsels, commands, induces or procures its commission, is
      punishable as a principal.

      (b) Whoever willfully causes an act to be done which if directly
      performed by him or another would be an offense against the United
      States, is punishable as a principal."

"substantial assistance" in the investigation or prosecution of one or more persons who had committed criminal offenses, the government would move for a downward departure for his sentence, pursuant to U.S.S.G.S 5K1.1.3 On November 20, 1998, the district court accepted Swint's guilty plea. The government supported Swint's bail application, and Swint was eventually released on bond.

After he was released on bail, Swint began cooperating with the U.S. Attorney's office in its investigation of various credit card and other fraudulent scams. On February 18, 1999, while on bail, Swint used another person's name and social security number to lease a 1999 Ford Expedition sports utility vehicle, valued at approximately $40,000. He was arrested by the police department of Hillside, New Jersey. On May 10, 1999, the Assistant U.S. Attorney who had negotiated the plea agreement with Swint met with him and his lawyer and informed them that Swint's February 18 arrest could seriously jeopardize his chances of obtaining the section 5K1.1 downward departure. The AUSA warned Swint that if he were involved in any further violations of federal, state, or local law, the government would not seek the departure.

Deterred only briefly, Swint soon broke the law again. Barely a month later, on June 14, 1999, he used a false name to complete a credit card application at a Home Depot store. He was arrested by the police department of South Plainfield, New Jersey, and charged with attempted credit card fraud, resisting arrest, and obstruction.4 On June 15, 1999, the government informed Swint by letter that because he had violated the plea agreement twice by

_____

3. U.S.S.G. S 5K1.1 provides in relevant part:

> "Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines."

4. Following Swint's arrest on June 14, 1999, the U.S. Customs Service determined that Swint had engaged in additional criminal activity, including using a false identity to lease a vehicle from a Chevrolet dealership, as well as unlawfully re-titling, placing in another's name, and switching license plates on the vehicle.

engaging in two separate incidents of criminal conduct, the government would not move for the section 5K1.1 departure.

The district court conducted a sentencing hearing on July 15, 1999. At the hearing, Swint moved for a three-level downward departure pursuant to section 3E1.1 based on his acceptance of responsibility. Swint also argued that the district court should not depart upward based on his "egregious" criminal record because he cooperated extensively with the government's investigations. In addition, he argued that the district court should compel the government to file a motion to depart downward pursuant to section 5K1.1. The government acknowledged that Swint had provided "substantial" assistance in one case, but that he was not entitled to the downward departure because he had breached the plea agreement by committing the two subsequent offenses in February and June, 1999.

The district court denied Swint's motion for a downward departure for acceptance of responsibility because Swint had committed additional offenses after entering into the plea agreement. The court also agreed with the government's decision not to seek a downward departure under section 5K1.1 because Swint had breached the plea agreement in three ways: (1) by committing additional crimes after signing the plea agreement; (2) by failing to disclose to the government his ongoing criminal activities; and (3) by acting in a manner, while cooperating with the government, that was not at the express direction of the government.

The district court then examined Swint's criminal history score, which the PSR calculated at VI. Describing Swint's thirty-year criminal history as "prodigious" and a "Niagara" and considering the fact that Swint had twenty-two convictions that had not been counted toward his criminal history score, the district court departed upward from the applicable range of forty-six to fifty-seven months to sixty-three to seventy-eight months. At that point, the government detailed the extent of Swint's cooperation with the government's investigation, and requested the court to sentence Swint in the lower half of the new range. The

court did so and sentenced Swint to seventy months'
incarceration. Swint now appeals his sentence.

Discussion

Swint makes two primary arguments on appeal. First, he
contends that despite his committing two criminal acts
after entering into the plea agreement, the government
breached the agreement by not moving for a downward
departure under section 5K1.1. Second, Swint maintains
that the government also breached the agreement by failing
to inform the district court of the "full nature and extent"
of his cooperation with the investigation until it was too late
in the sentencing hearing. Finding both arguments to be
without merit, we affirm Swint's sentence.

I. Construction of the Plea Agreement

The first issue is essentially one of contract construction.
Swint argues that the government breached the plea
agreement by not requesting a downward departure for him
based on his substantial assistance. He asserts that despite
the two offenses he committed after entering into the plea
agreement, the language of the agreement still required the
government to move for the downward departure at
sentencing. Whether the government breached the plea
agreement is a question of law which this Court reviews de
novo. See United States v. Huang, 178 F.3d 184, 187 (3d
Cir. 1999); United States v. Roman, 121 F.3d 136, 142 (3d
Cir. 1997). When a defendant has entered into a plea
agreement expressly requiring the government to move for
a downward departure under section 5K1.1, the district
court and reviewing court are "free to apply contract
principles" to determine whether the parties have complied
with the terms of the agreement. See United States v. Isaac,
141 F.3d 477, 481–82 (3d Cir. 1998).5 Swint has the

_____

5. In situations in which there is no plea agreement, the government's
decision not to move for a downward departure based on section 5K1.1
may be reviewed only for "unconstitutional motive," like race or religion.
See Isaac, 141 F.3d at 481 (citing Wade v. United States, 112 S.Ct. 1840
(1992)). When there is an agreement, the district court may interpret the
agreement according to contract principles and consider whether the

burden of demonstrating by a preponderance of the evidence that the government breached the plea agreement. See Huang, 178 F.3d at 187.

The relevant portions of the plea agreement provide as follows:

> ". . . If Swint enters a guilty plea and is sentenced on this charge, and otherwise fully complies with all of the terms of this agreement, this Office will not initiate any further charges arising from Swint's participation between May 1997 and October 1997 in the unauthorized use of unauthorized access devices. . ..

> Cooperation

> Swint shall cooperate fully with this office. As part of that obligation, Swint shall truthfully disclose all information concerning all matters about which this office and other Government agencies designated by this Office may inquire of him. Swint also shall make himself available at all reasonable times requested by representatives of the Government and shall truthfully testify in all proceedings, including grand jury and trial proceedings, as to any subject about which he is questioned. Furthermore, Swint agrees to provide to this Office, upon request, all documents and other materials relating to matters about which this Office

---

government has acted in good faith in choosing not to move for the downward departure. See id. at 481–83. Presumably, a district court may also determine whether the government has acted with an unconstitutional motive in this circumstance. Huang suggests that even when a plea agreement exists, the government's decision not to move for a section 5K1.1 departure may be reviewed only  for unconstitutional motive or bad faith, see Huang, 178 F.3d at 189, but this conclusion may simply represent a drafting slip. District courts, as well as reviewing
courts, clearly retain the ability to employ contract principles to determine whether both parties have complied with the terms of a plea agreement. This point is ultimately irrelevant to the present appeal because Swint has alleged neither bad faith nor unconstitutional motive on the part of the government, and it appears that the government acted within the terms of the agreement in not seeking the departure, see infra.

inquires of him. Full cooperation includes participating, if requested, in affirmative investigative techniques, such as making telephone calls, tape recording conversations, and introducing law enforcement officials to other individuals. All such activity by Swint must be conducted only at the express direction and under the supervision of this Office and federal law enforcement personnel.

Should Swint withdraw from this agreement, or should Swint commit any additional federal, state, or local crimes, or should it be established that Swint has intentionally given materially false, incomplete, or misleading testimony or information or otherwise has violated any provision of this agreement, the non-prosecution provisions of this agreement shall be null and void. All other provisions of this agreement shall remain in full force and effect . . . .

Sentencing

. . .

Except as otherwise provided in this agreement, this office reserves its right to take any position with respect to the appropriate sentence to be imposed on Swint by the sentencing judge. In addition, this Office will inform the sentencing judge and the U.S. Probation Office of: (1) this agreement; (2) the nature and extent of Swint's activities and relevant conduct with respect to this case; (3) the full nature and extent of Swint's cooperation with this Office and when such cooperation commenced; and (4) all other information relevant to sentencing, favorable or otherwise, including information provided by Swint before and after signing this agreement.

Further, if Swint fully complies with this agreement and, prior to his sentencing, provides substantial assistance in the investigation or prosecution of one or more persons who have committed offenses, this office will move the sentencing judge, pursuant to Section 5K1.1 of the Sentencing Guidelines, to depart from the otherwise applicable guideline range. Whether the sentencing judge does in fact impose a sentence below

the otherwise applicable guideline range is a matter committed solely to the discretion of the sentencing judge. The determination whether Swint has provided substantial assistance to the Government rests solely in the discretion of this Office. Swint may not withdraw his plea if this Office determines that Swint has not rendered substantial assistance or if the court refuses to grant the Government's motion for a downward departure." (emphasis added)

Swint concedes that the offenses he committed in February and June, 1999, constituted violations of the plea agreement.6 Swint's argument concerns instead the proper remedy for these violations. Relying primarily on the "Cooperation" section, which provides that"the non-prosecution provisions of this agreement shall be null and void" in the event that Swint withdraws from the agreement or violates it in any way, Swint argues that the only remedy available to the government is the rescission of its promise not to prosecute other offenses arising during the period of May-October, 1997.7 In support of his argument, Swint points to the next sentence of the "Cooperation" section, which states that "[a]ll other provisions of this agreement shall remain in full force and effect." Accordingly, he contends that the government's obligation to move for the downward departure based on his substantial cooperation likewise remains "in full force and effect." By not moving for a downward departure, the government (according to Swint) breached the plea agreement.

Swint's reading of the plea agreement is flawed. As the government rightly points out, the "Sentencing" section of the agreement, which discusses the section 5K1.1 motion, specifically conditions the government's moving for the downward departure on (1) Swint's "fully" complying with the agreement "and" (2) his providing "substantial assistance" with the government's investigation. As Swint was fully aware, one of the basic requirements of the plea

_____

6. Indeed his counsel expressly so conceded at oral argument.

7. There is no evidence, and Swint does not claim, that the government has attempted to prosecute Swint for any offenses that occurred between May and October, 1997.

9

agreement was that Swint commit no more crimes. After his first arrest on February 18, 1999, the government even gave Swint another chance and told him that if he engaged in further illegal activity, he would forfeit the departure motion. Shortly thereafter, on June 14, 1999, Swint again violated this provision of the agreement when he attempted to commit credit card fraud at the Home Depot store. By committing these subsequent offenses, Swint, as he admits, failed to comply with the terms of the agreement; under the "Sentencing" provision, Swint's noncompliance released the government from its obligation to move for the downward departure. Furthermore, we reject Swint's argument that his breach was not material.

Under Swint's reading of the plea agreement, any violation of the agreement would result only in the voiding of the non-prosecution provision. Accordingly, no violation could extinguish the government's promise to move for the downward departure, a result we find absurd. The language that Swint relies on says that the non-prosecution provisions of the agreement will be null and void if Swint breaches the agreement and that the other provisions will remain in full effect. This is not tantamount to saying that all of the government's obligations will remain in full effect; instead, it states that the other provisions of the agreement, including the "Sentencing" provision and its requirement that Swint comply fully with the agreement in order to earn the downward departure motion, remain in effect. Swint's post hoc parsing of the plea agreement does not alter that fact.

Moreover, the operative effect of Swint's interpretation would eviscerate one purpose of the plea agreement (as well as the purpose of allowing him out on bail), which was to have Swint aid the government in exchange for a possibly lower sentence--in other words, to make him earn the downward departure motion. The purpose was not to enable him to engage in further illegal activity, and then still benefit from the downward departure. "In determining whether the terms of the plea agreement have been violated, the court must determine whether the government's conduct is consistent with the parties' reasonable understanding of the agreement." Roman, 121

10

F.3d at 142 (quoting United States v. Hernandez , 17 F.3d 78, 80–81 (5th Cir. 1994)). We find the government's decision not to move for a downward departure manifestly consistent with any reasonable understanding of this plea agreement. By contrast, Swint's construction of the agreement makes little sense in light of the agreement's clear purpose. This Court has rejected other tortured and illogical interpretations of plea agreements, and we do the same here. See Huang, 178 F.3d at 189 (rejecting "the remarkable proposition" argued by the defendant that when the government refuses to move for a downward departure because the defendant has not performed under the plea agreement, the defendant should be permitted to withdraw his guilty plea).

Swint relies on the Second Circuit's recent opinion in United States v. Padilla, 186 F.3d 136 (2d Cir. 1999), but we find that case distinguishable. In Padilla , the government submitted a section 5K1.1 motion based on the defendant's substantial assistance, but the defendant failed to appear at the sentencing hearing. See Padilla , 186 F.3d at 139. The defendant was subsequently arrested for participating in the sale of two bags of crack cocaine to a police officer. See id. Prior to the second sentencing hearing, the government withdrew its section 5K1.1 motion on the ground that Padilla's offense violated the plea agreement. On appeal, the Second Circuit found that the government had breached the agreement because the government withdrew the motion, after originally making it, without an enumerated provision in the plea agreement permitting it to withdraw such a motion. See id.  at 141. The Padilla court observed "[t]he [plea] agreement, however, is silent with regard to the withdrawal of a Section 5K1.1 and 18 U.S.C. S 3553(e) motion," id. at 141 (original emphasis), and went on to state "we conclude that it [the plea agreement] prohibits the Government from withdrawing the Section 5K1.1 and 18 U.S.C. S 3553(e) motion because it failed to enumerate specifically the right to withdraw the motion in the several specific and serious consequences that would follow if Padilla committed further crimes or otherwise violated the agreement." Id. (emphasis added). See also id. at 142 ("The plea agreement was silent as to whether the Government could withdraw the Section 5K1.1

11

and 18 U.S.C. S 3553(e) motion . . ."). The Second Circuit concluded this portion of its opinion by stating"[o]ur holding is necessarily a narrow one, because of the limited nature of the issue raised by the attempted withdrawal of the motion . . . Withdrawal has been specifically dealt with in some plea agreements but was not in the one before us." Id. at 142. Here, by contrast, withdrawal of a previously made motion is not at all involved, and the plea agreement between Swint and the government by the clearest implication contemplates that the government may elect not to move for the section 5K1.1 downward departure in the event of Swint's noncompliance. Padilla's"narrow" holding is consequently inapposite here.8

II. The "Full Nature and Extent" of Swint's Cooperation

Swint's other principal argument is that the government breached the plea agreement by failing to inform the district court at sentencing of the "full nature and extent" of his cooperation with the government's investigation. This argument is also meritless.

The plea agreement provides that the government"will inform the sentencing judge and the U.S. Probation Office of . . . the full nature and extent of Swint's cooperation with this Office and when such cooperation commenced." Swint contends that the government breached this obligation in that its provision of the details of Swint's cooperation to the

_____

8. The government also suggests that by committing these two subsequent offenses, Swint did not meet the other basic requirement of providing "substantial assistance." The government acknowledges that the assistance Swint provided regarding the investigation of one individual turned was in fact "substantial." In the government's judgment, however, Swint failed to continue to provide substantial assistance sufficient to earn the section 5K1.1 motion when he committed the subsequent offenses because he violated the terms of the agreement and lost any credibility he might have as a future witness. In other words, his subsequent criminal acts undermined the usefulness of the assistance he had provided. See United States v. Wilkerson, 179 F.3d 1083, 1086 (8th Cir. 1999) (upholding district court's conclusion that government did not have to file a section 5K1.1 motion when the defendant had continued to use drugs after the agreement because that behavior undermined the "quality" of his assistance). We do not resolve this contention as it is not necessary for us to do so.

12

district court was too little and too late: too little because the government allegedly did not state everything Swint did in his cooperation, and too late because the government did not relay the details of Swint's cooperation to the district court until after the court had decided to depart upward based on Swint's criminal history. It is Swint's belief that the district court should have heard all the details of Swint's cooperation while it considered whether to depart upward based on his admitted "egregious" his criminal history, and that therefore Swint's substantial cooperation would have balanced out his criminal history and foreclosed the upward departure.

We do not believe that the government was either too little or too late in its description of Swint's cooperation. First, Swint does not provide anything other than conclusory allegations to explain how the Government's description of his cooperation was, as he asserts, "understated and incomplete." Before the district court, the government offered a lengthy description of Swint's cooperation activities; this description takes up several pages of the hearing transcript, and would appear to satisfy any notion of a "full" and detailed chronology. Second, Swint does not explain why (or how) the government breached the agreement by offering its description at a time he characterizes as "unduly late" in the hearing. The most obvious weakness to Swint's argument is that there is no provision in the agreement dictating when the government must provide this information to the court; presumably it must only do so before the district court pronounces the sentence.

Moreover, as the government points out, even if it had chronicled all the details of Swint's cooperative efforts before the district court decided to depart upward based on Swint's criminal history, these efforts have no relevance to a district court's decision whether to depart, upward or downward, based on criminal history. Section 4A1.3 of the Sentencing Guidelines discusses only departures based on the under or over-representation of criminal history scores; it nowhere suggests that a defendant's subsequent cooperation in any way wipes out his prior criminal record. This Court has observed that once a district court has

13

determined that a departure based on criminal history is warranted, it should then consider a defendant's cooperation with the government when sentencing within the new range. See United States v. Bruno, 897 F.2d 691, 693 (3d Cir. 1990). The district court retains discretion, however, "as to whether to give effect to that cooperation." Bruno, 897 F.2d at 693.

Bruno does not support Swint's contention that the district court was required to have considered his cooperation (and therefore had the full account of it from the government) before deciding to depart upward. Instead, it merely confirms that the district court acted within its discretion when, after determining that an upward departure was appropriate, it considered Swint's cooperation and sentenced him within the new range. That is what the district court did in this case. At sentencing, the district court stated that "I find that an upward departure of Mr. Swint's category is absolutely warranted" due to his thirty-year criminal history, and then began to determine what new level was appropriate. As it did so, the district court stated that "in considering what level in the Guidelines table adequately reflects the defendant's criminal history, I have considered the defendant's cooperation with the Government." Later, the government provided its lengthy narrative about Swint's cooperation to the district court and requested that the court sentence Swint to the lower half of the new range. The district court agreed and sentenced Swint to seventy months' imprisonment. The district court appropriately exercised its discretion in weighing Swint's cooperation in the context of the new sentencing range, and had the benefit of the government's description of Swint's cooperation to do so. In sum, we find that the government did not breach the plea agreement and in fact gave Swint the benefit of his bargain.

Conclusion

Swint's sentence is
AFFIRMED.

14

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit