**UNITED STATES of America,**

v.

**Ronald HARRIS, Appellant.**

No. 01–1495.

United States Court of Appeals, Third Circuit.

Submitted April 8, 2002.

Decided May 3, 2002.

---

Before MCKEE, BARRY, and ALARCON, Circuit Judges.

## OPINION OF THE COURT

MCKEE, Circuit Judge.

Ronald Harris and Howard Gordon were charged with a variety of federal offenses stemming from two armed robberies of beverage truck drivers in Philadelphia, Pennsylvania. Harris pled guilty and agreed to provide "substantial assistance" in exchange for the government's promise to move for a downward departure at sentencing pursuant to U.S.S.G. 5k1.1. However, at sentencing, the government refused to make that motion because of Harris' purported failure to fully cooperate. Harris responded by moving to enforce the plea agreement or, in the alternative, to withdraw his guilty plea. The district court denied both motions and this appeal followed. For the reasons that follow, we will affirm.

### I

Inasmuch as we write only for the district court and the parties who are familiar with the circumstances underlying the instant appeal, we need not recite the factual or procedural background of this dispute at any length.

### A.

Harris makes several arguments in support of his attempt to have the plea agreement enforced or the plea withdrawn. First, he alleges that the government acted in bad faith in refusing to move for a downward departure under 5K1.1. More specifically, Harris claims that he provided substantial assistance, and that the government misstated critical facts concerning his cooperation at sentencing and also failed to adequately pursue information he provided.

We apply contract principles in reviewing an alleged violation of a plea agreement. *United States v. Swint*, 223 F.3d 249, 253 (3d Cir.2000); see also *United States v. Isaac*, 141 F.3d 477, 481–82 (3d Cir.1998). The government must adhere to the terms of a plea agreement because such an agreement induces a defendant to enter a guilty plea and provides the consideration for the defendant's admission of guilt. *United States v. Huang*, 178 F.3d 184 (3d Cir.1999). However, a defendant has the burden of establishing that the government breached the agreement by a preponderance of the evidence. See *United States v. Conner*, 930 F.2d 1073, 1076 (4th Cir.1991).

As noted here, the government agreed to move for a downward departure if Harris provided substantial assistance. For purposes of the agreement, "substantial assistance" meant that Harris agreed to provide truthful, complete, and accurate information regarding any known criminal activity and that he could not protect any person by omission. The agreement also clearly stated that it was within the government's sole discretion to determine whether Harris had substantially cooperated as required by the agreement.

Although this qualification in favor of the government does not entitle the government to arbitrarily disavow its obligation to file a 5K1.1 motion, it does give the government discretion to evaluate Harris' assistance and refuse to file a motion if it honestly concludes that Harris' level of cooperation was less than required by the plea agreement. *United States v. Abuhouran*, 161 F.3d 206 (3d Cir.1998). Therefore, if the government honestly evaluated Harris' cooperation and came to a good faith conclusion that his assistance did not warrant a 5K1.1 motion, it was not obligated to make such a motion. The government argues that this is precisely what happened. It contends that Harris refused to offer information about crimes he had not been charged with, and he also refused to disclose the name of a third individual who was involved with Harris and his codefendant.

In support of its allegation, the government points to Harris' own admissions before the district court during his February 22, 2001 sentencing hearing. There, in a last ditch effort to withdraw his guilty plea, Harris stated that he thought the plea agreement only required him to give details of the crimes he had been charged with. He also claimed he didn't think he had to implicate anyone other than Gordon, the codefendant in the instant case.

■ Harris now argues that the government's assessment of his cooperation is inaccurate. He insists that he did cooperate, and the government misrepresented facts by inventing a third suspect and then faulting him for not providing a name. However, the record contains nothing that might support this assertion. Moreover, the government represented during the sentencing hearing that the records of the Philadelphia Police Department were inconsistent with Harris' denials of a third person and that representation was not contradicted. Consequently, Harris has not met his burden of refuting the government's stated reasons for refusing to move for a downward departure. Harris also attempts to establish the government's bad faith by claiming that the government failed to adequately develop the information that he did provide. He contends that where plea agreements condition a 5K1.1 motion on substantial assistance, the government must make a good faith effort to use the information that is provided. Although we agree with this as a general statement of principle, we do not believe it assists Harris here.

Harris' argument to the contrary rests upon two instances which he claims establish the government's inadequate use of information he provided. He first claims that the government failed to locate a witness who could corroborate information he provided. Harris notes that the government had the witness' social security number and infers that the government could therefore have located the witness had it tried. Second, Harris refers to a separate instance where the government allegedly made no effort to use information he provided regarding an unsolved robbery.

The government asserts that it made adequate but unsuccessful efforts to locate the witness in question and diligently followed up on all information Harris provid-

ed. Harris' attorney refused to challenge the government's investigative efforts at the first sentencing hearing although he was afforded that opportunity. When the court asked defense counsel if the government's statement of its effort to use Harris' information was accurate, counsel confirmed that it was.

### B.

Harris also claims that the district court erred in failing to hold a hearing on the quality of his cooperation. However, "[t]he Supreme Court has repeatedly noted that courts are properly hesitant to examine prosecutorial decision making." *Abuhouran*, 161 F.3d at 216 (internal quotation marks omitted). Furthermore, in Issac, we outlined the procedures to be followed when a defendant challenges the government's refusal to file a 5K1.1 motion. There, we noted:

> [W]e do not suggest that an evidentiary hearing must be held every time a defendant challenges the prosecutors exercise of discretion.... To trigger judicial review of the prosecutor's decision [not file a 5K1.1 motion in contravention of a written plea agreement], the defendant must first allege that he ... believes the government is acting in bad faith. The government may rebut this allegation by explaining its reasons for refusing to depart. If the government explains its reasons, the defendant must make a showing of bad faith to trigger some form of hearing on that issue. Unless the government's reasons are wholly insufficient, or unless the defendant's version of events, supported by at least some evidence, contradicts the government's explanation, no hearing is required

141 F.3d at 484 (citations and quotation marks omitted). Inasmuch as the govern-

ment's version was not contradicted here, no evidentiary hearing was required.

### C.

We also disagree with Harris' claim that the district court silenced Harris without affording him an opportunity to refute the government's representations about the quality of his cooperation. Harris did challenge the government's refusal to recommend a downward departure, at which point the court asked the government to justify its decision. Immediately after the government explained its refusal to tender a 5K1.1 motion, the court invited Harris' attorney to rebut the government's proffer. As noted above, Harris' attorney declined this invitation. Rather, he indicated that the government's recitation of events was accurate, but suggested that Harris might like to address the court for himself. This prompted the court to warn that it would be unwise for Harris to say anything that might prejudice his then pending motion to withdraw his guilty plea.

Defense counsel said nothing at that point, and the court then continued discussing Harris' motion to withdraw his guilty plea. Thereafter, neither Harris nor his attorney attempted to contradict the government's representation. Thus, it appears from this record that defense counsel made a conscious decision not to challenge the government's explanation of its refusal to make a 5K1.1 motion. Harris had an opportunity to confer with counsel at this point and yet there was no objection to the government's explanation. Furthermore, at the second sentencing hearing on February 22, 2001, the defendant did address the court. He took that opportunity to explain that he thought he only had to tell the government what he and Gordon did in regard to the offense with which they were charged. He insisted that he never understood that he was

agreeing to inform on others, or discuss uncharged crimes. (App.99). In fact, he continues to argue that he would not have pled guilty had he understood that the government was expecting him to disclose anything about uncharged offenses, or anyone other than Gordon. Thus, Harris' own statements on this record strongly corroborate the government's view of Harris' cooperation.

## D.

Harris also argues that the district court erroneously denied his alternative motion to withdraw his guilty plea, and erred in not explaining why it was denying his motion. We reject both of these arguments.

Harris's reasons for wanting to withdraw his guilty plea can best be summarized as follows: (1) he didn't understand the meaning of "cooperation" and "sole discretion" as used in the plea agreement; (2) he hastily entered into the plea agreement; and (3) he was actually innocent, but thought he would save the government time and money if he plead guilty.

Under Fed.R.Crim.P. 32(d), a criminal defendant does not have an absolute right to withdraw a guilty plea. *United States v. Martinez*, 785 F.2d 111, 113 (3d Cir.1986). We have identified the following three factors that guide a court's discretion in exercising its discretion to grant or deny a motion to withdraw a guilty plea: (1) whether the defendant asserts his innocence; (2) whether the government would be prejudiced if the plea is withdrawn; and (3) the strength of the defendant's reasons for moving to withdraw. *United States v. Huff*, 873 F.2d 709, 712 (3d Cir. 1989); *United States v. Trott*, 779 F.2d 912, 915 (3d Cir.1985.). Moreover, as to the first factor, the defendant must not only assert his innocence but also provide a sufficient explanation for why he took the contrary position during the Rule 11 colloquy. See *United States v. Harris*, 44 F.3d 1206, 1210 (3d Cir.1995).

█ Harris did finally assert his innocense here, but he delayed doing so until he was standing before the judge to be sentenced. Moreover, almost 27 months elapsed between Harris' original guilty plea, and his subsequent recantation of it. The district court could clearly consider a delay of that magnitude in deciding if it would be appropriate to allow Harris to withdraw the guilty plea he had entered more than 2 years earlier. See Fed. R.Crim.P. 35 Advisory Committee note at 114 (West 1995) (quoting *United States v. Barker*, 514 F.2d 208, 222 (D.C.Cir.1975).

Moreover, the government makes a credible claim that it would be prejudiced if Harris were allowed to change his plea now. The government points out that co-defendant Gordon had been prepared to testify against Harris pursuant to a separate plea agreement when Harris originally pled guilty. However, Gordon has now been sentenced and therefore has little incentive to testify. Thus, the government is now understandably concerned that Gordon may "go south" if put on the witness stand. That concern is well taken.

Moreover, although the government can show prejudice here, we note that the government is not required to make any such showing where, as here, a defendant offers insufficient reasons for withdrawing a guilty plea. See *United States v. Harris*, 44 F.3d 1206, 1210 (3d Cir.1995).

We also note that Harris' argument that he did not understand the nature of the agreement is completely belied by the record. Harris' attorney went over the agreement with him. In fact, the district court delayed the March 6, 1998 sentencing hearing so that Harris' attorney could finish discussing the agreement with Harris. Furthermore, the judge went through

the agreement with Harris at the same hearing making sure that he understood it. The court even had Harris explain the meaning of a provision in the agreement back to the court in the defendant's own words. That is the very same provision he now insists that he did not understand. (App.71) (explaining to the court, at the court's request, that "sole discretion" meant "by myself."). Moreover, the district court gave the standard warning, informing Harris of the substantive rights he was relinquishing by signing the agreement and entering his plea. Harris acknowledged that he understood everything, and that he still wanted to forego all of the rights and protections that had just been explained and proceed to plead guilty. He has now clearly had a change of heart, but that is not enough to establish an abuse of discretion.

Moreover, Harris' contention that the district court was required to make findings of fact and conclusions of law before denying his request is without merit. Findings of fact and conclusions of law are not required where the record establishes that the defendant is not entitled to relief. See *Smith v. United States*, 213 F.2d 730, 731 (6th Cir.1954).

### E.

Lastly, Harris raises several claims under the umbrella of ineffective assistance of counsel. However, ineffective assistance claims must be raised in a separate petition under 28 U.S.C. 2255 so that a sufficient factual basis can be developed to permit meaningful review. See *United States v. Gambino*, 788 F.2d 938, 950 (3d Cir.1986). Therefore, we will not address those claims here. Harris may assert them later in a properly filed motion under 28 U.S.C. 2255.

## II

For all the foregoing reasons we will affirm the decision of the district court.