# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 11-3918

BASSAM ASSAF, M.D.,

*Plaintiff-Appellant,*

*v.*

TRINITY MEDICAL CENTER,
an Illinois not-for-profit corporation,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 10 C 4021—**John A. Gorman,** *Magistrate Judge.*

SUBMITTED MAY 30, 2012—DECIDED AUGUST 30, 2012

Before EASTERBROOK, *Chief Judge*, and BAUER and POSNER, *Circuit Judges*.

BAUER, *Circuit Judge*. The plaintiff-appellant, Dr. Bassam Assaf, was fired from his job at Trinity Medical Center and sued his former employer in Illinois state court. The case was removed to federal court on the basis of diversity jurisdiction. While the action was still pending, the parties reached an out-of-court settlement agreement, the terms of which provoked further dispute.

Trinity contended that the agreement was incomplete and invalid. Assaf moved for summary judgment, requesting that the court enforce the agreement. The district court granted Assaf's motion, but the question of damages was left open for trial. Ruling on several pretrial motions, the district court made two determinations that are contested on this appeal: (1) the court ruled that Assaf cannot collect certain professional fees lost as a result of Trinity's failure to employ him through 2011; and (2) the court refused to order specific performance of Trinity's promise to reinstate Assaf as director of the hospital's epilepsy clinic. These rulings, according to the district court, obviated the need for a trial. We reverse and remand for trial to properly ascertain Assaf's damages.

## I. BACKGROUND

Trinity Medical Center employed Dr. Bassam Assaf, a foreign national from Syria, as its medical director for the epilepsy clinic from 2005 to 2009. Trinity terminated Assaf's employment in August of 2009. In the months following, the parties attempted but failed to negotiate a new employment contract. Assaf filed an action for breach of contract in state court on February 1, 2010. The case was improperly removed to federal court on the basis of diversity jurisdiction (more on that later).

After bringing the suit, Assaf entered into negotiations with Trinity's new CEO, Tom Tibbitts, in an attempt to settle their disagreements. Apparently without the aid of attorneys, Assaf and Tibbitts drafted and signed a

settlement agreement ("the agreement") on February 26, 2010. The agreement provided, in part, that Assaf would receive a salary of $50,000 each year from 2009 to 2011; and that Assaf's title would be changed in 2010, but that his employment would continue at Trinity through the end of 2011. After that point, his employment would automatically renew for a year unless either party gave 90-days notice that it was terminating the employment relationship. Shortly after signing the agreement, the parties began to quibble again; Trinity refused to honor it, raising questions about its validity.

Assaf moved for summary judgment in the district court on his claim for breach of the February 26 agreement. The court granted the motion and decided to enforce the agreement, at least partially. It left open for trial the question of Assaf's damages. During discovery, Assaf announced in response to an interrogatory that he would be seeking compensation for lost professional fees; these were fees separate from his salary that he collected for performing certain procedures as Trinity's epilepsy director. Assaf claimed that due to Trinity's breach of the agreement, the epilepsy unit suffered and the number of patients admitted for these procedures dropped sharply after his termination in 2009.

Trinity eventually moved to bar any evidence of Assaf's lost professional fees at trial. This occurred after the close of discovery but prior to the preparation of any pretrial order. The district court agreed with Trinity, holding that Assaf had failed to provide adequate evidence of any lost fees during discovery.

Despite the fact that Assaf's continued employment was a part of the agreement, apparently Trinity never re-employed him. On September 8, 2011, almost a month after the district court granted Assaf's request to enforce the agreement, Trinity requested that the district court reconsider the provision requiring Assaf's re-employment because "there is a policy against ordering specific performance of a personal services contract." (Def.'s Motion In Limine at 6, Sept. 8, 2011). The district court ordered Trinity to honor the provision and reinstate Assaf in an October 4 order. But rather than reinstating Assaf, Trinity filed a "motion to clarify or stay," causing further delay. On December 7, 2011, the court reversed its earlier order on the issue of specific performance. It held that under Illinois law, Trinity could not be ordered to reinstate Assaf in accordance with the agreement. Shortly thereafter, the court proceeded without trial to enter a final judgment awarding Assaf his salary for the years 2009 through 2011, attorney's fees, and compensatory damages. The court did not award any amount in lost professional fees.

## II.  DISCUSSION

### A.  Removal and Subject-Matter Jurisdiction

As we mentioned before, this case was improperly removed to federal court on motion of the defendant, Trinity. Assaf is a citizen of Syria, and Trinity has its principal place of business in Rock Island, Illinois. And the amount in controversy does exceed the statutory

minimum of $75,000. So the parties meet the require-
ments for diversity jurisdiction.[1] *See* 28 U.S.C. § 1332.
But as a home-state defendant, Trinity cannot properly
request removal. The primary purpose behind removal
in diversity cases is to allow an out-of-state defendant
to avoid potential bias when appearing in the plain-
tiff's chosen forum. As an Illinois not-for-profit, Trinity
had no reason to fear this sort of bias in Illinois state
court. If a case arises out of the diversity of the parties
and not out of a question of federal law, removal is
proper only if "none of the . . . defendants is a citizen of
the State in which such action is brought." 28 U.S.C.
§ 1441(b); *see also Samaan v. St. Joseph Hosp.*, 670 F.3d 21,
27 (1st Cir. 2012); *Hurley v. Motor Coach Indus., Inc.*, 222
F.3d 377, 378 (7th Cir. 2000).

Given that he lost his forum of choice, it would have
made sense for Assaf to object to the improper removal
and request a remand to state court under 28 U.S.C.
§ 1447(c); Assaf did not object, and he waived any ability

---

[1] We requested that the parties file supplemental briefs to
answer whether Assaf was admitted to the United States as a
permanent resident and, if so, whether he was domiciled
in Illinois. As a permanent resident domiciled in Illinois,
Assaf would count as a citizen of both Illinois and Syria
under 28 U.S.C. § 1332(a). *See Intec USA, LLC v. Engle*, 467
F.3d 1038, 1041-43 (7th Cir. 2006). This would in turn defeat
diversity jurisdiction, since Trinity is also a citizen of Illi-
nois. Both parties agree, however, that Assaf is not admitted to
this country as a permanent resident. As he is a citizen of Syria
only, complete diversity remains between the parties.

to do so after 30 days. *See* § 1447(c). But no matter; although removal was improper in this case, it was merely a procedural error, and we have held that such a mistake does not spoil subject-matter jurisdiction. *Hurley*, 222 F.3d at 379-80 (noting the other circuits that have adopted the same rule). Since the removal error was non-jurisdictional, and since the requirements for diversity jurisdiction are met, we turn now to the merits.

## B. Specific Performance

Assaf argues that under the terms of the February 26 agreement, he is entitled to reinstatement through the year 2012. The agreement stated that Assaf's employment would automatically renew at the end of 2011 unless either party chose to terminate the relationship within 90 days of the end of the term. Although it had never actually re-instated Assaf, Trinity nevertheless notified him in the fall of 2011 that it did not intend to continue employing him beyond that year. This met the 90-days notice requirement of the agreement and would seem to end any prospect of Assaf's employment at Trinity beyond the year 2011. But Assaf counters that as a party in breach of the agreement, Trinity is prohibited by Illinois law from seeking to enforce a term of the contract in its own favor.

Apparently, the district court believed it could work around this rule of law by holding that Trinity never actually breached the agreement. Given that no party was in breach, the court explained in its order from December 7, 2011, Trinity rightfully exercised its

option under the agreement to terminate Assaf's employment. But it is difficult to see how Trinity did not breach. The terms of the agreement unambiguously called for Assaf's reinstatement through the end of 2011. Both parties signed the agreement and Assaf kept his end of the bargain by relinquishing his other pending legal claims. The district court ruled that the agreement was a valid, enforceable contract. But Trinity never reinstated Assaf. This was a breach; but that does not mean Assaf is entitled to reinstatement through 2012.

We apply the law of Illinois to settle a contract dispute in a diversity case. *See Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). It is true that Illinois forbids a party in material breach of a contract from taking advantage of terms in that contract benefitting him. *See, e.g., McBride v. Pennant Supply Corp.*, 623 N.E.2d 1047, 1051 (Ill. App. Ct. 1993); *Goldstein v. Lustig*, 507 N.E.2d 164, 168 (Ill. App. Ct. 1987); *see also Kosuga v. Kelly*, 257 F.2d 48, 56 (7th Cir. 1958). But that rule does not apply in this case; Assaf misses the point. Trinity was simply terminating the agreement according to its own terms, not taking unfair advantage of a particular provision. The simple rationale behind the Illinois rule, a classic rule of contract law, is that a party should be prevented from benefitting from its own breach. *See, e.g.*, 23 SAMUEL WILLISTON & RICHARD A. LORD, WILLISTON ON CONTRACTS § 63:8 (4th ed. 2009); *Market Street Assocs. Ltd. P'ship v. Frey*, 941 F.2d 588, 592 (7th Cir. 1991). Assaf's rights under the agreement were not unfairly impaired by Trinity exercising the non-renewal option. After all, Assaf is not only receiving the salary he should have received as

epilepsy director for the years 2009 through 2011, he is also entitled (as we will soon explain) to seek lost professional fees from those years. Since the rationale for the rule is not implicated in this case, it simply does not apply.

Since there was nothing wrong with Trinity re-terminating Assaf in the fall of 2011, we need not decide whether Illinois law allows specific performance in a settlement agreement like this one. The employment relationship was properly terminated when Trinity gave notice, and any issue about specific performance for reinstatement in past years is now moot. So we turn to Assaf's damages.

### C. Loss of Professional Fees

We have already determined that Trinity breached the agreement; the only remaining question for the district court is, what is the proper computation of damages? We believe that Assaf is entitled to seek the lost fees he incurred as a result of Trinity's failure to re-employ him from the time of his termination in 2009 until the end of 2011.

The district court held that Assaf was not entitled to these lost fees because he failed to provide an adequate estimate of the loss during discovery. Assaf initially notified Trinity that he would seek the fees in his response to Trinity's interrogatories. He did not include a calculation of the total amount lost at that time. The district court noted that Assaf was required to disclose

a computation of his damages under Federal Rule of Civil Procedure 26(a). Rule 26(a)(3) further requires that such pretrial disclosures be made at least 30 days prior to the trial; Assaf complied with this by submitting a full computation with supporting evidence on September 13, 2011. But the district court ruled that Rule 37(c) prevented Assaf from using that computation because he disclosed the information after discovery had ended, prejudicing Trinity by not allowing it ample time to challenge his evidence. The court then held that the remaining issues could be resolved without a trial, and it entered an award for Assaf that did not include his lost professional fees.

We review a decision to bar the admission of evidence at trial for an abuse of discretion. *Hotaling v. Chubb Sovereign Life Ins. Co.*, 241 F.3d 572, 578 (7th Cir. 2001).

The bottom line here is that Assaf did provide a computation of his damages before the preparation of any pretrial order, and although this came after the close of discovery, we have held that litigation is not limited to information obtained through discovery only. *See Krolnik v. Prudential Insurance Co.*, 570 F.3d 841, 843 (7th Cir. 2009). Trinity was aware well before the discovery deadline of May 20, 2011, that Assaf would be seeking some amount in lost professional fees. Assaf not only included this information in response to an interrogatory, he was deposed on the subject on April 8, 2011. At that time, he explained how he planned to go about calculating the lost fees. The district court believed that Trinity would be prejudiced by the "late" (post-

discovery) disclosure of Assaf's full computation provided on September 13, but this is difficult to understand; the trial was still at least a month away, and Trinity had access to the information relating to procedures and fees from the epilepsy clinic all along. There is no need for Assaf to reveal to Trinity, through discovery, knowledge already in the hospital's own files.

We therefore find that the district court abused its discretion in barring Assaf's evidence of lost professional fees.

### III. CONCLUSION

For the aforementioned reasons, we REVERSE the district court's order barring evidence of lost professional fees and REMAND for trial to properly ascertain Assaf's damages.