**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3407
_____

UNITED STATES OF AMERICA

v.

CHRISTOPHER ERWIN,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(No. 3-12-cr-00364-001)
District Judge:  Hon. Freda L. Wolfson

Argued:  May 20, 2014
_____

Before:  McKEE, Chief Judge, CHAGARES, and
NYGAARD, Circuit Judges.

(Filed: August 26, 2014)
_____

OPINION
_____

Jeffrey M. Brandt, Esq. [ARGUED]
Robinson & Brandt
629 Main Street, Suite B
Covington, KY 41011
        Attorney for Appellant

Mark E. Coyne, Esq.
Office of United States Attorney
970 Broad Street, Room 700
Newark, NJ 07102

Norman Gross, Esq. [ARGUED]
Office of United States Attorney
Camden Federal Building & Courthouse
401 Market Street
Camden, NJ 08101
        Attorneys for Appellee

CHAGARES, Circuit Judge.

This case presents the novel question of what remedy is available to the Government when a criminal defendant who knowingly and voluntarily executed a waiver of right to appeal — and received valuable promises from the Government in return — violates his plea agreement by filing an appeal. Christopher Erwin pleaded guilty to conspiracy to distribute and possess with intent to distribute oxycodone, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 21 U.S.C. § 846. His agreement included a waiver of right to appeal his sentence if it was within or below the advisory Sentencing Guidelines range that results from a total advisory United States Sentencing Guidelines ("U.S.S.G.") offense level of 39. The Government agreed not to bring further criminal charges against Erwin in connection with the conspiracy, and it also agreed to seek a downward departure under U.S.S.G. § 5K1.1. The Government fulfilled its part of the bargain; Erwin, who challenges his within-Guidelines sentence on appeal, did not.

For the following reasons, we conclude that Erwin's appeal is within the scope of his appellate waiver, to which he knowingly and voluntarily agreed, and that he has failed to raise any meritorious grounds for circumventing the waiver. We further conclude that Erwin breached the plea agreement by appealing, and that the appropriate remedy for his breach is specific performance of the agreement's terms: that is, the Government will be excused from its obligation to move for a downward departure. We will therefore vacate Erwin's

2

judgment of sentence and remand for de novo resentencing in accordance with this opinion.

I.

From approximately January 2009 through December 2010, Erwin managed a large-scale oxycodone distribution ring (the "Erwin Organization") that operated throughout the State of New Jersey and elsewhere. The Erwin Organization's modus operandi was to obtain medically unnecessary prescriptions for oxycodone from licensed physicians Hassan Lahham and Jacqueline Lopresti, in Erwin's name and others' names, in exchange for cash. Erwin's customers, posing as patients, filled the prescriptions at various pharmacies in New Jersey and New York. The conspiracy yielded hundreds of thousands of oxycodone tablets, which were illegally sold on the black market.

On May 9, 2011, the Government filed a sealed criminal complaint against Erwin, Lahham, Lopresti, and nineteen others in the United States District Court for the District of New Jersey. The complaint charged each defendant with conspiracy to distribute and possess with intent to distribute oxycodone, a Schedule II controlled substance. On May 8, 2012, Erwin executed a written plea agreement with the Government in which he agreed to plead guilty to a one-count information charging him with the above-referenced conspiracy that would later be filed in the District Court.[1] The Government, in turn, agreed not to bring further criminal charges against Erwin in connection with the conspiracy.

Schedule A of the plea agreement set forth, inter alia, several stipulations addressing Erwin's offense level under the advisory Sentencing Guidelines: (1) based on the quantity of oxycodone for which Erwin was responsible (6,912 grams), his base offense level was 38, see U.S.S.G. § 2D1.1(c)(1); (2) Erwin was subject to a four-level enhancement for his leadership role in the conspiracy, see id.

---

[1] The information was filed on May 24, 2012. Erwin waived his right to indictment and entered his guilty plea that day. The information was later superseded to add a forfeiture count; Erwin consented in writing to being sentenced thereon.

3

§ 3B1.1(a); and (3) Erwin qualified for a three-level downward adjustment for acceptance of responsibility, see id. § 3E1.1.  In accordance with the above, the parties agreed that the total Guidelines offense level applicable to Erwin was 39.  The parties further agreed that "a sentence within the Guidelines range that results from the agreed total Guidelines offense level is reasonable."  Appendix ("App.") 15 ¶ 7.

Paragraph 8 of Schedule A contained the following waiver of right to appeal:

> Christopher Erwin knows that he has and, except as noted below in this paragraph, voluntarily waives, the right to file any appeal, . . . including but not limited to an appeal under 18 U.S.C. § 3742 . . . , which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from a total Guidelines offense level of 39.  This Office [the United States Attorney for the District of New Jersey] will not file any appeal, motion[,] or writ which challenges the sentence imposed by the sentencing court if that sentence falls within or above the Guidelines range that results from a total Guidelines offense level of 39.  The parties reserve any right they may have under 18 U.S.C. § 3742 to appeal the sentencing court's determination of the criminal history category.  The provisions of this paragraph are binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein.  Furthermore, if the sentencing court accepts a stipulation, both parties waive the right to file an appeal . . . claiming that the sentencing court erred in doing so.

Id. ¶ 8.  Both parties reserved the right to "oppose or move to dismiss" any appeal barred by the above paragraph.  Id. ¶ 9.

Erwin also entered into a written cooperation agreement with the Government.  The agreement provided

4

that, if the Government determined "in its sole discretion" that Erwin substantially assisted in the investigation or criminal prosecution of others, it would ask the court to depart downward from the Guidelines range pursuant to U.S.S.G. § 5K1.1. Supplemental Appendix ("Supp. App.") 47. However, "[s]hould Christopher Erwin . . . violate any provision of this cooperation agreement or the plea agreement, . . . this Office will be released from its obligations under this agreement and the plea agreement, including any obligation to file [the] motion . . . ." Supp. App. 48 (emphasis added). "In addition, Christopher Erwin shall thereafter be subject to prosecution for any federal criminal violation of which this Office has knowledge . . . ." Id. The plea and cooperation agreements "together constitute[d] the full and complete agreement between the parties." Supp. App. 46. For the sake of brevity, we will refer to them collectively as the plea agreement.

During the next several months, Erwin attended debriefing sessions at which he was "questioned extensively." Supp. App. 53. In particular, he reviewed and explained documents critical to the Government investigation of the Erwin Organization, including his records, coconspirators' medical files, and prescriptions. Id. Erwin also agreed to testify against Lopresti and Lahham, influencing their decisions to plead guilty. Id. In light of Erwin's "important and timely" assistance, the Government wrote a letter to the court on July 12, 2013, asking it to depart downward "from the otherwise applicable" Guidelines range and to consider Erwin's cooperation "in mitigation of [his] sentence." Supp. App. 54.

The United States Probation Office's Presentence Investigation Report ("PSR"), as revised on July 15, 2013, mirrored the parties' stipulations as to Erwin's offense level and determined that Erwin's criminal history category was I. The PSR noted, however, that Erwin's advisory Guidelines "range" was 240 months (20 years) "due to the statutory maximum."[2] PSR ¶ 187. A sentence of 240 months, for an

---

[2] Pursuant to U.S.S.G. § 5G1.1(a), "[w]here the statutorily authorized maximum sentence is less than the minimum of

5

offender in criminal history category I, falls within the low end of the range resulting from offense level 38 and the middle of the range resulting from offense level 37. See U.S.S.G. ch. 5, pt. A (Sentencing Table).

Erwin's sentencing hearing was held on July 25, 2013. The District Court agreed with the parties and the PSR that: (1) Erwin's base offense level based on the quantity of oxycodone attributable to him was 38; (2) Erwin was subject to a four-level enhancement for his leadership role in the conspiracy; and (3) Erwin qualified for a three-level downward adjustment for his acceptance of responsibility. Erwin's total offense level of 39 and criminal history category of I yielded an initial Guidelines range of 262 to 327 months of imprisonment. The court noted that Erwin's sentence was "capped at" 240 months "because of the statutory maximum." App. 22. Citing its July letter to the court, the Government then moved for a five-level downward departure pursuant to U.S.S.G. § 5K1.1. The Government clarified that, to the extent there "may be some question as to where to start," it was requesting a departure from offense level 39 to offense level 34, as opposed to from the statutory maximum of 240 months. App. 24. Erwin did not object, and the court granted the Government's motion. Erwin's final Guidelines range was 151 to 188 months of imprisonment. After considering the factors under 18 U.S.C. § 3553, the court imposed a within-Guidelines sentence of 188 months, three years of supervised release, and a $100 special assessment.

Erwin timely appealed, arguing that the District Court's use of offense level 39 as its starting point for the downward departure was error because, when combined with criminal history category I, offense level 39 yields an advisory Guidelines range above the statutory maximum. The Government did not cross-appeal. It counters, however, that this Court should vacate and remand for de novo resentencing where it will seek a "modest increase" in Erwin's sentence in light of his breach of the appellate waiver. Gov't Br. 34.

the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence."

II.

The District Court had jurisdiction over the prosecution of this criminal action pursuant to 18 U.S.C. § 3231. We have jurisdiction over Erwin's appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). Because the Government has invoked the appellate waiver in Erwin's plea agreement, however, we will "decline to review the merits of [his] appeal" if we conclude that: (1) the issues raised fall within the scope of the appellate waiver; and (2) he knowingly and voluntarily agreed to the appellate waiver; unless (3) enforcing the waiver would "work a miscarriage of justice." United States v. Grimes, 739 F.3d 125, 128–29 (3d Cir. 2014) (quotation marks omitted). "The validity and scope of an appellate waiver involves a question of law and is, therefore, reviewed de novo." United States v. Wilson, 707 F.3d 412, 414 (3d Cir. 2013).

Erwin waived the right to file any appeal challenging his sentence, including but not limited to an appeal under 18 U.S.C. § 3742, "if that sentence falls within or below the Guidelines range that results from a total Guidelines offense level of 39," with the caveat that both parties reserved the right to appeal the court's determination of Erwin's criminal history category. App. 15 ¶ 8. Erwin was sentenced to 188 months of imprisonment, which is far below the 262- to 327-month Guidelines range that results from a total offense level of 39 and criminal history category of I. It is also below the 240-month statutory maximum. Erwin does not challenge his criminal history category. His appeal fits squarely within the scope of the waiver. Moreover, as Erwin acknowledges, see Erwin Br. 25, the District Court fulfilled its "critical" role of ensuring that his waiver of appeal was knowing and voluntary. United States v. Khattak, 273 F.3d 557, 563 (3d Cir. 2001); see Fed. R. Crim. P. 11(b)(1)(N) (requiring that before accepting a defendant's guilty plea, the court must inform the defendant of, and determine that he understands, "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence").

Erwin's appellate waiver must therefore be enforced unless we identify the "unusual circumstance" of "an error amounting to a miscarriage of justice" in his sentence.

7

Khattak, 273 F.3d at 562. This determination depends on factors such as

> [T]he clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.

Id. at 563 (first alteration in original) (quotation marks omitted).

Erwin contends that enforcement of the waiver would be manifestly unjust because the District Court applied the Government's downward departure motion to an "inapplicable" Guidelines range, thereby depriving him of the "benefit of his plea bargain and the full five-level departure the [D]istrict [C]ourt agreed he deserved." Erwin Br. 25–26. Erwin specifically argues that, because the statutory maximum (240 months) is less than the minimum of the Guidelines range resulting from offense level 39 and criminal history category I (262 to 327 months), the court should have departed downward from 240 months — which, when combined with his criminal history category, roughly equates to offense level 38. If the court had departed from offense level 38 to offense level 33, instead of from 39 to 34, Erwin's final Guidelines range would have been 135 to 168 months instead of 151 to 188 months.

Erwin raises two constitutional grounds for circumvention of the appellate waiver and a claim of procedural error, none of which have merit. Erwin first argues that the court violated the spirit of Apprendi v. New Jersey, 530 U.S. 466 (2000), where the Supreme Court held that, under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. The statutory maximum for Apprendi purposes is "the maximum

8

sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely v. Washington, 542 U.S. 296, 303 (2004) (emphasis omitted). Erwin pleaded guilty to conspiracy to distribute and possess with intent to distribute an unspecified amount of oxycodone, a Schedule II controlled substance. Erwin's admission that he violated § 841(b)(1)(C) subjected him to a statutory maximum sentence of 20 years. His 188-month sentence amounts to less than 16 years and thus did not violate Apprendi.[3]

Erwin's second constitutional argument is that the District Court's failure to depart to offense level 33 deprived him of his due process right to receive the full benefit of his bargain with the Government. Under Santobello v. New York, 404 U.S. 257 (1971), "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Id. at 262. The Government in this case agreed to "move the sentencing judge," pursuant to U.S.S.G. § 5K1.1, to depart from the otherwise applicable Guideline range if it determined in its sole discretion that Erwin provided substantial assistance. Supp. App. 47. The agreement cautioned that, "[w]hether the sentencing judge does in fact impose a sentence below the otherwise applicable guideline range is a matter committed

---

[3] To the extent that Erwin challenges the court's findings relevant to his initial Guidelines range, we have held that the constitutional rights to a jury trial and proof beyond a reasonable doubt "attach[] only when the facts at issue have the effect of increasing the maximum punishment to which the defendant is exposed." United States v. Grier, 475 F.3d 556, 565 (3d Cir. 2007) (en banc). Because the advisory Guidelines do not "alter[] the judge's final sentencing authority," they do not have this effect and an error in their application consequently does not trigger Apprendi or its progeny. Id.; see also United States v. Smith, 751 F.3d 107, 117 (3d Cir. 2014) (holding that the Supreme Court's decision in Alleyne v. United States, 133 S. Ct. 2151 (2013), "did not curtail a sentencing court's ability to find facts relevant in selecting a sentence within the prescribed statutory range").

9

solely to the discretion of the sentencing judge." Id. Because the record is devoid of any indication that the Government promised it would specifically request a five-level downward departure, much less that the court would apply the departure to the statutory maximum, Erwin's due process claim also fails.

Erwin's claim that the court committed procedural error fares no better.[4] "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." Gall v. United States, 552 U.S. 38, 49 (2007). Even assuming the District Court erred procedurally when it applied the downward departure to the 262- to 327-month range instead of to the statutory maximum, see U.S.S.G. § 5G1.1 & cmt., its arguably erroneous calculation would be "precisely the kind of 'garden variety' claim of error contemplated by [an] appellate waiver," United States v. Castro, 704 F.3d 125, 141–42 (3d Cir. 2013) (quotation marks omitted). See United States v. Corso, 549 F.3d 921, 931 (3d Cir. 2008) ("[A]llow[ing] alleged errors in computing a defendant's sentence to render a waiver unlawful would nullify the waiver based on the very sort of claim it was intended to waive." (second alteration in original) (quotation marks omitted)); see also United States v. Price, 558 F.3d 270, 283–84 (3d Cir. 2009) (holding that there was no miscarriage of justice where the defendant claimed that the Government abused its discretion by refusing to request a three-level downward adjustment for acceptance of responsibility); United States v. Mabry, 536 F.3d 231, 243 (3d Cir. 2008) (characterizing the defendant's challenges to district court's sentencing calculation as "insubstantial" because "[t]hey do not implicate fundamental rights or constitutional principles").

---

[4] We lack jurisdiction to review the extent of a district court's downward departure. United States v. Torres, 251 F.3d 138, 151–52 (3d Cir. 2001). Erwin's claim is reviewable because it is "premised on the theory that the [D]istrict [C]ourt misapplied the Guidelines." United States v. Shaw, 313 F.3d 219, 222–23 (4th Cir. 2002); see United States v. Langford, 516 F.3d 205, 212 (3d Cir. 2008).

Erwin's sentence did not exceed the 240-month maximum sentence prescribed by statute, let alone the higher advisory Guidelines range of 262 to 327 months. Moreover, Erwin largely acquiesced in the claimed error by failing to lodge a contemporaneous objection. Khattak, 273 F.3d at 563. We cannot conclude that, under these circumstances, enforcing Erwin's waiver would work a miscarriage of justice. His appeal is therefore barred by the appellate waiver.

## III.

In circumstances where a defendant's arguments on appeal are based on a valid appellate waiver, our ordinary procedure is to enforce the waiver by dismissing the defendant's appeal, thereby affirming the defendant's sentence. E.g., United States v. Stabile, 633 F.3d 219, 248 (3d Cir. 2011). But the Government argues that merely dismissing Erwin's appeal and affirming his sentence "would neither make the Government whole for the costs it has incurred because of Erwin's breach nor adequately deter other cooperating defendants from similar breaches." Gov't Br. 16. Instead, the Government asks the Court to vacate Erwin's sentence so that it can pursue the remedies specified in the breach provision of the plea agreement — that is, the opportunity to bring additional criminal charges against Erwin or to withdraw its § 5K1.1 motion. The Government indicates that, if granted that choice here, it would pursue the latter option. Gov't Br. 17, 34. Erwin objects that the Government's proposal "would, as a practical matter, end this Court's review for miscarriage of justice, as defendants would be wary to appeal even in the most egregious cases of error." Reply Br. 10.

To address the Government's argument, we examine three issues: (1) whether Erwin in fact breached his plea agreement; (2) if so, whether resentencing in accordance with the terms of the agreement is an appropriate remedy in this case; and (3) even if this relief is appropriate, whether the cross-appeal rule divests this Court of jurisdiction or authority to grant it.

## A.

11

"[P]lea agreements, although arising in the criminal context, are analyzed under contract law standards." United States v. Castro, 704 F.3d 125, 135 (3d Cir. 2013) (quotation marks omitted). We have long exercised de novo review over the question of whether a Government breach has occurred. United States v. Warren, 642 F.3d 182, 187 n.6 (3d Cir. 2011) (citing United States v. Rivera, 357 F.3d 290, 293–94 (3d Cir. 2004)). Because "a plea agreement necessarily works both ways," Castro, 704 F.3d at 135 (quotation marks omitted), we more recently held that the same standards apply when analyzing a claim that a defendant has breached a plea agreement, United States v. Williams, 510 F.3d 416, 424 (3d Cir. 2007).

In Williams, the defendant pleaded guilty to a narcotics offense pursuant to a written plea agreement. Id. at 418. In the agreement, the parties stipulated as to Williams's offense level and further agreed "not to seek or argue for any upward or downward departure or any upward or downward adjustment not set forth herein." Id. at 419 (quotation marks omitted). Despite this promise, Williams sought downward departures under U.S.S.G. § 4A1.3 and Chapter 5, as well as a downward variance. Id. at 419–20. Rejecting the Government's position that Williams's requests were foreclosed by the terms of the plea agreement, id. at 420, the district court reduced Williams's criminal history category and varied downward from the resulting range, id. at 420–21. The Government appealed, asking this Court to resolve "what standard should be applied when analyzing a claim that a defendant has breached a plea agreement." Id. at 417. Because "the government would have no meaningful recourse if it performed its end of the agreement but did not receive the benefit of its bargain in return," id. at 422–23, we held that the same standard of review applies in considering a defendant's breach of a plea agreement as in a Government breach case — that is, "[w]e will review the question whether a defendant breaches his plea agreement de novo, and will impose the burden on the government to prove the breach by a preponderance of the evidence," id. at 424. Further, "we will analyze the issue whether a defendant has breached a plea agreement according to the same contract principles that we would apply in analyzing a government breach . . . ." Id.

12

"In determining whether [Erwin] breached his plea agreement, we examine the plain meaning of the agreement itself and construe any ambiguities in the agreement against the government as drafter." Id. at 424–25. We need not draw any inferences here, however, because the relevant language is unambiguous. Paragraph 1 of Schedule A of the plea agreement provided that the parties "agree[d] to the stipulations set forth herein," including those concerning Erwin's offense level. App. 14 ¶ 1. The stipulations included a waiver of Erwin's right to challenge his sentence, including via a direct appeal under 18 U.S.C. § 3742, "if that sentence falls within or below the Guidelines range that results from a total Guidelines offense level of 39." App. 15 ¶ 8. Erwin's 188-month sentence is below the Guidelines range that results from an offense level of 39 and his undisputed criminal history category. Despite promising not to appeal from such sentence, he did precisely that.[5] Erwin's appeal therefore amounts to a breach[6] of the plea agreement.

---

[5] Erwin contended at oral argument that there was no breach because he merely waived the right to file an appeal as opposed to promised not to file an appeal. See, e.g., Oral Arg. Tr. 4:08–5:23, 7:46–8:25 (3d Cir. May 20, 2014); see also Erwin Supplemental Br. 1 n.1. Erwin has not proffered any principled basis for drawing this distinction, and common sense dictates that there is none. A "waiver" is defined as "the intentional relinquishment or abandonment of a known right." United States v. Olano, 507 U.S. 725, 733 (1993) (quotation marks omitted). A "promise" is similarly defined as "a person's assurance that the person will or will not do something." Black's Law Dictionary 1406 (10th ed. 2014). By waiving his right to appeal, Erwin relinquished that right; in so doing, he promised not to exercise it.

[6] Erwin does not dispute that, if he breached the agreement by filing an appeal, such breach was material. Nor could he: the breach defeated the parties' bargained-for objective and deprived the Government of a substantial part of its benefit. See Pittsburgh Nat'l Bank v. Abdnor, 898 F.2d 334, 338 (3d Cir. 1990); see also Total Containment, Inc. v. Environ Prods., Inc., 921 F. Supp. 1355, 1416–17 (E.D. Pa. 1995) (holding that the plaintiff's lawsuit, which was filed despite a general release in the parties' settlement agreement,

B.

"[A] classic rule of contract law[] is that a party should be prevented from benefitting from its own breach." Assaf v. Trinity Med. Ctr., 696 F.3d 681, 686 (7th Cir. 2012); see also United States v. Bernard, 373 F.3d 339, 345 (3d Cir. 2004) (contract law prohibits a defendant from "get[ting] the benefits of [his] plea bargain, while evading the costs"). This rule carries particular importance in the criminal context, as a court's failure to enforce a plea agreement against a breaching defendant "would have a corrosive effect on the plea agreement process" by "render[ing] the concept of a binding agreement a legal fiction." Williams, 510 F.3d at 422, 423. Given that our criminal justice system depends upon the plea agreement process, that result cannot be countenanced. Id. at 423.[7] As the Supreme Court explained in Blackledge v. Allison,

> the guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned. The defendant avoids extended pretrial incarceration and the anxieties and uncertainties of a trial; he gains a speedy disposition of his case, the chance to acknowledge his guilt, and a prompt start in realizing whatever potential there may be for rehabilitation. Judges and prosecutors conserve vital and scarce resources. The public is protected from the risks posed by those charged with criminal offenses who are at large on bail while awaiting completion of criminal proceedings.

"constituted a material breach of the Settlement Agreement"), aff'd in part, vacated in part on other grounds, 106 F.3d 427 (Table) (Fed. Cir. 1997); Maslow v. Vanguri, 896 A.2d 408, 423 (Md. Ct. Spec. App. 2006) (holding that the appellant's appeal of the jury's verdict was a material breach of the "no appeals" provision in the parties' settlement agreement).
[7] Of the 2,920 convictions in the district courts within our circuit in 2013, 2,780 (more than 95%) were by guilty plea.

431 U.S. 63, 71 (1977). "These advantages can be secured, however, only if dispositions by guilty plea are accorded a great measure of finality." Id. Appellate waivers exist precisely because they preserve the finality of judgments and sentences imposed pursuant to valid guilty pleas. United States v. Wiggins, 905 F.2d 51, 54 (4th Cir. 1990).

Erwin's plea agreement constituted a classic bargained-for exchange. Erwin agreed to plead guilty and to assist the Government in obtaining guilty pleas from his codefendants, conserving Government resources that would otherwise have been expended on his prosecution and those of his coconspirators. To ensure that prosecutorial resources would not be expended on him in the future, Erwin relinquished his right to appeal most aspects of his sentence. In return, the Government promised not to initiate additional criminal charges against Erwin for his role in the conspiracy, and it agreed to seek a § 5K1.1 departure if Erwin cooperated. Erwin received the full benefit of his bargain because the court accepted his guilty plea (resulting in the speedy disposition of his case) and granted the Government's request for a downward departure (yielding a sentence more than four years below the statutory maximum). That Erwin received a shorter sentence than he would have in the absence of the bargain is evidenced by the court's telling statement at sentencing that "but for" the Government's motion, it "would have been happy" to impose a longer term. App. 49.

In contrast to Erwin, who fully benefited from the plea agreement, the Government devoted valuable resources to litigating an appeal that should never have been filed in the first place. "Empty promises are worthless promises; if defendants could retract their waivers . . . then they could not obtain concessions by promising not to appeal. Although any given defendant would like to obtain the concession and exercise the right as well, prosecutors cannot be fooled in the long run." United States v. Wenger, 58 F.3d 280, 282 (7th Cir. 1995). Erwin is no exception. He purposely exchanged the right to appeal for items that were, to him, of equal or greater value. Having reaped the benefits of his plea agreement, he cannot avoid its principal detriment — to put it colloquially, he cannot "have his cake and eat it too." Id. at 282. Under basic principles of contract law, "[d]efendants

15

must take the bitter with the sweet." Id. at 283; see also United States v. Cianci, 154 F.3d 106, 110 (3d Cir. 1998) ("Under the law of this circuit, [a defendant] cannot renege on his agreement.").

"When the government breaches a plea agreement, the general rule is to remand the case to the district court for a determination whether to grant specific performance or to allow withdrawal of the plea." United States v. Nolan-Cooper, 155 F.3d 221, 241 (3d Cir. 1998). However, "we have allowed for an exception when the circumstances dictate that there is only one appropriate remedy for the defendant." Williams, 510 F.3d at 427; see, e.g., United States v. Badaracco, 954 F.2d 928, 941 (3d Cir. 1992) (holding that permitting withdrawal of the defendant's plea would "be an empty remedy," as he had already served much of his sentence); see also Nolan-Cooper, 155 F.3d at 241 (noting that a court should not impose a remedy against a non-breaching party's will). Similarly, we have observed that "when the government requests specific performance at the hands of a defendant's breach [of the plea agreement], . . . resentencing under the terms of the executed plea agreement might be the only appropriate remedy." Williams, 510 F.3d at 427–28; see Nolan-Cooper, 155 F.3d at 241 (agreeing with the parties that "if we found a breach of the plea bargain, the case should be remanded for a full resentencing").

We agree with the Government that specific performance is warranted here, and, as in Williams, specific performance means de novo resentencing. As a general matter, "[s]pecific performance is feasible and is a lesser burden on the government and defendant." United States v. Kurkculer, 918 F.2d 295, 302 (1st Cir. 1990), quoted in Nolan-Cooper, 155 F.3d at 241. Specific performance certainly is feasible where, as in this case, the plea agreement contained a detailed breach provision:

> Should Christopher Erwin . . . violate any provision of . . . the plea agreement . . . [the United States Attorney's] Office will be released from its obligations under this agreement and the plea agreement, including any obligation to file a motion under U.S.S.G. § 5K1.1 . . . .

16

Supp. App. 48 (emphases added).  We previously held that a defendant's breach of his plea agreement in advance of sentencing excused the Government from its obligation to move for a downward departure.  United States v. Swint, 223 F.3d 249, 254 (3d Cir. 2000).[8]

In summary, because Erwin's breach of the plea agreement occurred post-sentencing, we will vacate his sentence and remand for resentencing where, in light of his breach, the Government will be relieved of its obligation to seek a downward departure.

## C.

Unlike in Williams, where the Government appealed the judgment of sentence, the Government neither appealed nor cross-appealed in this case.  We are therefore confronted by, and heard oral argument on, a question of first impression:  whether the possibility of de novo resentencing is barred by application of the cross-appeal rule, which provides that "a party aggrieved by a decision of the district court must file an appeal in order to receive relief from the decision."  United States v. Tabor Court Realty Corp., 943 F.2d 335, 342 (3d Cir. 1991); see also United States v. Am. Ry. Express, 265 U.S. 425, 435 (1924) ("[A] party who does not appeal from a final decree of the trial court . . . may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary . . .").  We conclude that the cross-appeal rule does not apply

_____

[8] Erwin insists that the Government has "lost its discretion" not to request a downward departure, because it has already requested one.  Reply Br. 11–12.  While inventive, this argument is unpersuasive.  The only reason the Government is seeking to withdraw a motion that it has already filed is because Erwin elected to breach his agreement after benefiting from the motion.  Erwin's interpretation would "eviscerate one purpose of the plea agreement," namely, "to make him earn the downward departure motion."  Swint, 223 F.3d at 255.

and consequently does not bar the Government from seeking de novo resentencing.[9]

First, the Government could not have filed a cross-appeal even if it wanted to do so. Congress has vested appellate jurisdiction in the Courts of Appeals for review of final decisions of the district courts. "It is axiomatic that only a party aggrieved by a final judgment may appeal." Rhoads v. Ford Motor Co., 514 F.2d 931, 934 (3d Cir. 1975). The same is true of cross-appellants. See, e.g., Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC, 555 F.3d 1331, 1343 (11th Cir. 2009) ("[A]n appellee is not entitled to cross-appeal a judgment in his favor."); Great Am. Audio Corp. v. Metacom, Inc., 938 F.2d 16, 19 (2d Cir. 1991) (dismissing cross-appeal for lack of jurisdiction); see also United States v. Atiyeh, 402 F.3d 354, 358 (3d Cir. 2005) (articulating bases of jurisdiction over the Government's cross-appeal). "A party who receives all that he has sought generally is not aggrieved by the judgment affording the relief and cannot appeal from it." Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 333 (1980). This requirement does not derive from the jurisdictional limitations of Article III, but rather "from the statutes granting appellate jurisdiction and the historic practices of the appellate courts." Id.

"The Federal Government enjoys no inherent right to appeal a criminal judgment . . . ." Arizona v. Manypenny, 451 U.S. 232, 246 (1981). The grant of general appellate jurisdiction in 28 U.S.C. § 1291 does not authorize such an appeal, id., and 18 U.S.C. § 3731 (establishing, inter alia, appellate jurisdiction over a Government appeal from a district court's order dismissing an indictment or granting a new trial), has no relevance here. See United States v. Ferri, 686 F.2d 147, 151 (3d Cir. 1982). The sole source of authority for a Government appeal in this case would lie, if anywhere, in 18 U.S.C. § 3742. That statute permits the Government to appeal a defendant's sentence where the sentence: (1) was imposed in violation of law; (2) resulted from an incorrect application of the Sentencing Guidelines;

_____

[9] In light of this conclusion, we do not resolve whether the cross-appeal rule is jurisdictional or a matter of practice and, if the latter, whether this case warrants drawing an exception to the rule.

(3) departed from the applicable Guideline range; or (4) was plainly unreasonable, if imposed for an offense where there is no applicable Guideline. 18 U.S.C. § 3742(b).

The Government's argument does not fall into any of these categories, as Erwin's breach of the plea agreement occurred post-sentencing and was in no way sanctioned by the District Court. The District Court gave the Government everything it wanted with respect to Erwin's sentence — that is, it imposed a judgment of sentence that resulted from offense level 39 and criminal history category I and further incorporated the Government's § 5K1.1 motion. There was (and remains) no "sentencing error" for the Government to challenge for purposes of § 3742(b). It would be nonsensical to fault the Government for filing an appeal that we surely would have dismissed for lack of jurisdiction.[10]

Moreover, the remedy of de novo resentencing neither enlarges the Government's rights nor lessens Erwin's. A

---

[10] The Government could have moved to enforce the waiver and summarily affirm Erwin's appeal pursuant to Third Circuit L.A.R. 27.4 rather than waiting to raise the issue in the ordinary briefing schedule. See United States v. Goodson, 544 F.3d 529, 534 n.2 (3d Cir. 2008). The Government notes that it did not file such a motion in this case because it was engaged in negotiations with defense counsel regarding the decision to proceed with Erwin's appeal in light of the waiver. Gov't Br. 19 n.3. We encourage the Government to seek summary action under Rule 27.4 where possible and as early as possible, as doing so minimizes the amount of Government (and judicial) resources spent on appeals barred by appellate waivers. However, that the Government could have expended fewer resources is of no legal moment in this case: what matters is that Erwin breached the agreement, not how costly the breach was. In any event, the costs are not trivial when considered in the aggregate — in 2013 alone, nearly 50 motions to enforce an appellate waiver were filed within our circuit, the vast majority of which were granted. We are not confronted by, and therefore need not resolve, whether the Government may seek remedies other than summary affirmance of an appeal in a Rule 27.4 motion.

19

cross-appeal must be filed to secure a favorable modification of the judgment. See Am. Ry. Express, 265 U.S. at 435. As discussed supra, Erwin contends that the District Court erred in its initial Guidelines calculation. To remedy the error, he asks this Court to vacate his sentence and remand for a new sentencing hearing. Our decision to vacate Erwin's sentence and remand for de novo resentencing does not lessen his rights, as we are giving him exactly what he asked for. Neither does our decision enlarge the Government's rights: as the Government acknowledges, Erwin is free to argue not only that he is entitled to a variance, but also that the variance should be applied to the statutory maximum instead of to the initial Guidelines calculation. See U.S.S.G. § 5G1.1(a). Of course, the District Court may exercise its discretion to accept or reject any such argument pursuant to § 3553(a).

The Supreme Court's most recent decision dealing with the cross-appeal rule in the criminal context, Greenlaw v. United States, 554 U.S. 237 (2008), is not to the contrary. The defendant in Greenlaw appealed as too long a 442-month sentence. Id. at 240. The Government did not appeal or cross-appeal. Id. at 242. However, to counter the defendant's argument that his sentence was unreasonably long, the Government noted that the sentence should have been fifteen years longer because he was convicted of two violations of 18 U.S.C. § 924(c)(1)(A).[11] Id. Relying on the plain error rule, the Court of Appeals for the Eighth Circuit vacated the sentence and instructed the district court to impose the statutorily mandated consecutive minimum sentence, which it did. Id. at 242–43. The defendant petitioned for certiorari as to the following issue: "When a defendant unsuccessfully

---

[11] Under § 924(c)(1)(C)(i), "[i]n the case of a second or subsequent conviction under this subsection, the person shall . . . be sentenced to a term of imprisonment of not less than 25 years." Any sentence for violating § 924(c) must run consecutively to "any other term of imprisonment," including any other conviction under § 924(c). § 924(c)(1)(D)(ii). For the first § 924(c) offense, the district court imposed a five-year sentence under § 924(c)(1)(A)(i). As to the second § 924(c) conviction, the district court erroneously imposed the ten-year term prescribed in § 924(c)(1)(A)(iii) for first-time offenses. 554 U.S. at 241–42.

20

challenges his sentence as too high, may a [C]ourt of [A]ppeals, on its own initiative, increase the sentence absent a cross-appeal by the Government?" Id. at 243.

The Supreme Court held that it could not. It reasoned that "[e]ven if there might be circumstances in which it would be proper for an appellate court to initiate plain-error review, sentencing errors that the Government refrained from pursuing would not fit the bill" in light of § 3742(b)'s "dispositive direction." Id. at 248. In so holding, the Court recognized the importance of providing notice to a criminal defendant that "on his own appeal, his sentence would be increased." Id. at 252–53. In this case, unlike in Greenlaw, the Government did not deliberately disregard a sentencing error, and Erwin — whose entire appeal rests on the terms of his plea agreement — should have anticipated the possibility that he breached the agreement by appealing and thereby triggered the possibility of relief for his adversary. See United States v. Wells, 262 F.3d 455, 467 (5th Cir. 2001) ("[A] reasonable defendant would understand that his breach of the plea agreement would motivate the government to [withdraw leniency].").[12]

The Court of Appeals for the Seventh Circuit has held that a defendant's breach of his appellate waiver provision permits the Government to seek specific performance of the plea agreement, notwithstanding the absence of a

---

[12] In United States v. Harvey, 2 F.3d 1318 (3d Cir. 1993), a pre-Greenlaw decision, the Government argued in response to the defendant's sentencing appeal that the district court erroneously calculated the applicable base offense level as 22 instead of 25. Id. at 1326. The Government conceded, and we agreed, that its failure to file a cross-appeal precluded it from obtaining a sentence "more favorable" than that already imposed. Id. at 1326, 1330. Our decision in Harvey is consistent with Greenlaw — and does not guide our decision today — because the Government similarly declined to exercise its discretion to correct a sentencing error below that it easily could have challenged on appeal. Whereas "fundamental fairness" dictated an outcome favorable to the defendant in Harvey and Greenlaw, it dictates an opposite conclusion in this case.

Government cross-appeal. In <u>United States v. Hare</u>, 269 F.3d 859 (7th Cir. 2001), the defendant was charged with three federal crimes and pleaded guilty to one; the Government dismissed the other two and promised to recommend a reduction in offense level in exchange for his cooperation. <u>Id.</u> at 860. The defendant promised, among other things, not to appeal from the sentence — a promise that he subsequently breached. <u>Id.</u> The Court of Appeals held that dismissal of Hare's impermissible appeal would be an "incomplete response" because "the prosecutorial resources are down the drain." <u>Id.</u> at 862. But the court explained that there is another remedy: "[i]f the defendant does not keep his promises, the prosecutor is not bound either." <u>Id.</u> Namely, "the United States is free to reinstate dismissed charges and continue the prosecution." <u>Id.</u>; <u>see also</u> <u>United States v. Poindexter</u>, 492 F.3d 263, 271 (4th Cir. 2007) (determining that the Government may argue that "it is no longer bound by the plea agreement because the defendant's appeal amounts to a breach of that agreement").

The Supreme Court's decision in <u>Ricketts v. Adamson</u>, 483 U.S. 1 (1987) is also instructive. The defendant agreed to plead guilty to second degree murder and to testify against two alleged coconspirators. <u>Id.</u> at 3. While the defendant testified against the coconspirators in their initial trial, he refused to testify again when a retrial was ordered. <u>Id.</u> at 4. The State filed a new information charging the defendant with first degree murder, and the defendant's motion to quash the information on double jeopardy grounds was denied. <u>Id.</u> at 5. The Arizona Supreme Court rejected the defendant's double jeopardy claim, holding that the plea agreement "by its very terms waives the defense of double jeopardy if the agreement is violated." <u>Id.</u> at 6 (quotation marks omitted). On federal habeas review, the Supreme Court agreed that the defendant's breach of the plea agreement removed the double jeopardy bar to prosecution on the first degree murder charge. <u>Id.</u> at 8. In so holding, the Court emphasized that "[t]he State did not force the breach; [the defendant] chose, perhaps for strategic reasons or as a gamble, to advance an interpretation of the agreement that proved erroneous." <u>Id.</u> at 11. Here too, Erwin made a calculated decision to advance an interpretation of his appellate waiver that proved erroneous. It would be unjust to permit him to escape the consequences.

22

Having determined that the cross-appeal rule does not apply under these circumstances, we finally consider the source of our authority to grant de novo resentencing. That authority can be found in 28 U.S.C. § 2106, which permits us to modify, vacate, set aside, or reverse any judgment "lawfully brought before [us]" for review. Section 2106 further provides that we may remand the cause and direct the entry of such appropriate judgment, or "require such further proceedings to be had," as may be just under the circumstances. "[I]n determining what justice does require, the Court is bound to consider any change, either in fact or in law, which has supervened since the judgment was entered." In re Elmore, 382 F.2d 125, 127 & n.12 (D.C. Cir. 1967) (per curiam) (quotation marks omitted) (citing § 2106); see also Hormel v. Helvering, 312 U.S. 552, 557 (1941) ("There may always be exceptional cases or particular circumstances which will prompt a[n] . . . appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court . . . below.").

The validity of Erwin's sentence was lawfully brought before us via Erwin's direct appeal. See 18 U.S.C. § 3742(a). "When an appeal is taken from an order made appealable by statute, we have all the powers with respect to that order listed in 28 U.S.C. § 2106." United Parcel Serv., Inc. v. U.S. Postal Serv., 615 F.2d 102, 107 (3d Cir. 1980). Since the judgment was entered, there has been a significant change in fact (Erwin's breach of the plea agreement). As discussed at length above, de novo resentencing is not only just, but is also consistent with basic principles of contract law and the plain language of the plea agreement.

Contrary to Erwin's position, we do not believe that our holding will "end this Court's review for miscarriage of justice." Reply Br. 10. We will continue to review conscientiously whether enforcing defendants' appellate waivers would yield a miscarriage of justice (as well as whether a waiver was knowingly and voluntarily entered into and whether the issues raised fall within the scope of the waiver) but, as discussed supra, any such defendant must

23

accept the risk that, if he does not succeed, enforcing the waiver may not be the only consequence.

Accordingly, we will grant this relief pursuant to § 2106.

\* \* \* \* \*

"[B]oth the government and the defendant must fulfill promises made to achieve a plea agreement." United States v. Forney, 9 F.3d 1492, 1500 n.2 (11th Cir. 1993). Yet, "[i]n what has become a common sequence, a defendant who waived his appellate rights as part of a plea bargain, and received a substantial benefit in exchange, has failed to keep his promise." United States v. Whitlow, 287 F.3d 638, 639 (7th Cir. 2002). We hold that, like any defendant who breaches a plea agreement in advance of sentencing, a defendant who breaches his plea agreement by appealing thereby subjects himself to the agreement's breach provision. The breach provision in this case permits the Government to withdraw its motion for a downward departure. To that end, we will vacate and remand Erwin's judgment of sentence. Consistent with our precedent, Erwin will be resentenced by a different district judge than the one who presided over the now-vacated sentence. See Nolan-Cooper, 155 F.3d at 241; see also Williams, 510 F.3d at 428.[13]

IV.

For the foregoing reasons, we will vacate Erwin's judgment of sentence and remand to the District Court for resentencing before a different judge.

---

[13] Our precedent compels assigning the case to another judge for resentencing "irrespective of the fact that the need for resentencing . . . is not attributable to any error by the sentencing judge." Nolan-Cooper, 155 F.3d at 241. We emphasize that the reason for the reassignment in this case is not due to any error on the sentencing judge's part and that we have no doubt she could resentence Erwin fairly.